Catherine L. (Carpenter) BRIGHT,
Appellant–Defendant,

v.

Ronald E. KUEHL, Jr.,
Appellee–Plaintiff.

No. 66A03–9407–CV–00255.

Court of Appeals of Indiana.

April 27, 1995.

Rehearing Denied Aug. 28, 1995.

Patrick J. Roberts, Peru, for appellant.

Byron L. Tinkey, Rochester, for appellee.

## OPINION

STATON, Judge.

Catherine L. (Carpenter) Bright ("Bright") appeals from the trial court's judgment of damages against her and in favor of Ronald E. Kuehl, Jr. ("Kuehl"). In her appeal, Bright raises four issues for our review which we consolidate into two and restate as follows:

I. Whether the trial court erred in determining that Kuehl was entitled to equitable relief arising out of his cohabitation with Bright.

II. Whether the trial court erred in awarding Kuehl punitive damages.

We reverse and remand.

Bright and Kuehl met in April 1990 and soon thereafter became engaged. In August 1990, Bright moved into Kuehl's residence and the couple lived together until April 1991. During this eight month period, Bright did secretarial work through a temporary employment agency. Kuehl worked as an engineering technician until he was laid off in February 1991. After being laid off, Kuehl collected $95.00 per week in unemployment and did occasional construction work

and substitute teaching. After Kuehl was laid off, Bright worked a second job as a waitress.

During their cohabitation, all bills were paid and all checks were drawn from Kuehl's checking account. Bright deposited her paychecks into Kuehl's account. Kuehl balanced the checkbook monthly. Bright signed checks drawn on the account and used credit cards held in Kuehl's name. With these checks, Bright bought household items and clothing, and paid credit card bills. The parties also traded in Bright's vehicle and acquired a 1990 Grand Prix which was titled in both their names.

Throughout their cohabitation, Bright and Kuehl had a tumultuous relationship which culminated in a mutual protective order in which both parties were restrained from abusing and threatening each other. As a result, the couple separated and Bright could not enter Kuehl's residence to retrieve any of her belongings. Bright did subsequently return with a police officer and obtained two boxes of clothing. Kuehl retained all of the household items acquired by either party during the cohabitation including the Grand Prix which he continues to make payments.

Kuehl then filed suit against Bright seeking damages arising from Bright's alleged unauthorized use and control of his credit cards and checkbook, Bright's destruction of his personal property, medical expenses incurred as a result of Bright's physical attacks, and Bright's excessive use of the phone. Kuehl sought $14,000 in compensatory damages plus treble damages, punitive damages, and attorney fees. Bright counterclaimed seeking compensatory and punitive damages based upon Kuehl's unjust enrichment as a result of his retention of the personal property, and for pain and suffering resulting from Kuehl's abusive conduct.

Following a bench trial, the court awarded a judgment in favor of Kuehl of $28,270.39 consisting of $8,270.39 compensatory dam-

ages and $20,000 punitive damages.[1] The court awarded Bright $5,759 in damages on her counterclaim.[2] Thus, the net judgment in favor of Kuehl was $22,511.39.

As a basis for the judgment, the trial court found:

> [N]otwithstanding the lack of express contract between Ronald and Cathy, a contract can be implied from this relationship generally and also her tipped measure of control, financially, psychologically, and physically over Ronald, with consequence, and therefrom his entitlement to something in return. On the financial side, for example, her expenditures to her benefit far outweighed her contribution, to his detriment. Unjust enrichment and equitable considerations seem to flow naturally and logically therefrom in Ronald's favor, also rendering some entitlement to Cathy.

Record, p. 26.

Bright now appeals the judgment.

■■■ We note initially that a general judgment will be affirmed upon any legal theory consistent with the evidence, and the court of review neither reweighs the evidence nor rejudges the credibility of the witnesses. *Jones v. Jones* (1994), Ind.App., 641 N.E.2d 98, 101. When reviewing a general judgment, we presume that the trial court correctly followed the law. *Id.* The presumption that the trial court correctly followed the law is one of the strongest presumptions applicable to our consideration of a case on appeal. *Id.*

## I.

### Damages Arising Out of Cohabitation

Bright contends that the trial court's decision is contrary to law because there is no cause of action in Indiana which allows for recovery of funds expended during a cohabi-

---

1. The trial court itemized the compensatory damages as: $1786.00 for Bright's checks, $4623.05 for payment of charge accounts, $1511.34 for reimbursement of vehicle damages, $100.00 for medical expenses, and $250.00 for a Video Cassette Recorder.

2. The trial court itemized Bright's damages as: $2,800.00 for equity in Bright's car, $840.00 for General Motors discount, and $2,119.00 for value of converted personal property.

tation arrangement in contemplation of marriage absent fraud, deceit or a contract.[3]

■ This case presents an issue of first impression in Indiana: whether a party is entitled to relief based upon contributions during cohabitation without subsequent marriage absent an express agreement.

Our analysis begins with *Glasgo v. Glasgo* (1980), Ind.App., 410 N.E.2d 1325, *trans. denied.* There, a former wife sued her former husband for one-half of the assets accumulated during their period of cohabitation after their divorce. The trial court awarded the former wife a share of the property acquired by the parties during their cohabitation. On appeal, the former husband argued that the cause of action presented an unenforceable claim in Indiana. He contended that claims by nonmarried cohabitants were against public policy in Indiana because common law marriages were prohibited by statute.[4] *Id.* at 1327.

In affirming the trial court's decision, this court addressed the propriety of an equitable claim for relief in instances where couples live together without marrying. The court expressly stated that granting the petitioner relief was not against the public policy of this state and did not in any way impinge upon the legislature's prohibition of common law marriages. *Id.* The court concluded:

> To apply the traditional rationale denying recovery to one party in cases where contracts are held to be void simply because illegal sexual relations are posited as consideration for the bargain is unfair, unjust, and unduly harsh. Such unnecessary results probably do more to discredit the legal system in the eyes of the those who learn of the facts of the case than to strengthen the institution of marriage or the moral fiber of our society. To deny recovery to one party in such a relationship is in essence to unjustly enrich the other.[5]

*Id.*

However, the *Glasgo* court noted that cohabitation does not automatically give rise to the presumed intention of shared property rights between the parties and "[r]ecovery for parties seeking relief would be based only upon legally viable contractual and/or equitable grounds which the parties could establish according to their own particular circumstances." *Id.* at 1331–1332.

In *Chestnut v. Chestnut* (1986), Ind.App., 499 N.E.2d 783, this court approved the rationale in *Glasgo* in affirming the trial court's

**3.** We note that Kuehl failed to cite any authority or present any cogent argument in his appellee's brief. Generally, a party waives any allegation of error if the party fails to provide any citation to authority or statutes. Ind.Appellate Rule 8.3(A)(7); *Captain & Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 95, *trans. denied.* Such is akin to failure to file a brief, and subjects the appellee to reversal upon the appellant's showing of prima facie error. *Cf. Hacker v. Holland* (1991), Ind.App., 575 N.E.2d 675, 676, *trans. denied.* Nevertheless, we are not bound by this lesser standard and we choose to address this appeal on the merits.

**4.** *See* Ind.Code 31–7–6–1 (formerly I.C. 31–1–7–1).

**5.** In *Glasgo*, the court analyzed extensively the decision of *Hewitt v. Hewitt*, (1979) 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204. In *Hewitt*, the Illinois Supreme Court determined that individual claims of unmarried cohabitants to jointly accumulated property based upon a theory of implied contract contradicted the public policy of the state. The court explained that the issue rested upon whether it was appropriate for the court to grant a legal status to a private arrange-

ment substituting for the institution of marriage sanctioned by the State. *Id.* 31 Ill.Dec. at 832, 394 N.E.2d at 1209. The court opined: "[w]e cannot confidently say that the judicial recognition of property rights between unmarried cohabitants will not make that alternative to marriage more attractive by allowing parties to engage in such relationships with greater security." *Id.* Based upon that rationale, the court determined that the claim of the petitioner, a woman who lived with the defendant for fifteen years during which three children were born to the relationship, was unenforceable as it contravened public policy implicit in the statutory scheme of the Illinois Marriage and Dissolution of Marriage Act, disfavoring the grant of mutually enforceable property rights to knowingly unmarried cohabitants. *Id.* 31 Ill.Dec. at 834, 394 N.E.2d at 1211.

This court determined that the results reached by the court in *Hewitt* were unduly harsh and unnecessary stating "we are not convinced that the impact of the recognition of relationships such as the Hewitts' or the Glasgos' upon our society and the institution of marriage to be of greater importance than the rights of the immediate parties." *Glasgo, supra,* at 1329–30.

decision to include the wife's contributions during premarital cohabitation in the distribution of marital property upon dissolution. The court noted that it would be against public policy to ignore the wife's contributions during the period prior to marriage since she and her partner eventually married. *Id.* at 787.

Other jurisdictions have similarly adopted this right to relief and have held that unmarried couples may raise equitable claims such an implied contract and unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both. *See e.g.,* the landmark decision of *Marvin v. Marvin* (1976), 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976) and also; *Boland v. Catalano* (1987), 202 Conn. 333, 521 A.2d 142; *Mason v. Rostad* (1984), D.C.App., 476 A.2d 662; *Estate of Eriksen* (1983), Mn., 337 N.W.2d 671; *Hay v. Hay* (1984), 100 Nev. 196, 678 P.2d 672; *Collins v. Davis* (1984), 68 N.C.App. 588, 315 S.E.2d 759, *aff'd* by 312 N.C. 324, 321 S.E.2d 892; *Knauer v. Knauer* (1983), 323 Pa.Super. 206, 470 A.2d 553; *Watts v. Watts* (1987), 137 Wis.2d 506, 405 N.W.2d 303, *review denied.*

As such, we determine that a party who cohabitates with another without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment.

Thus, we must now examine whether the trial court properly awarded Kuehl relief based upon an implied contract and unjust enrichment, and whether there was sufficient evidence to support the judgment.[6]

■ Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896.

The trial court based its decision upon the notion of implied contract, unjust enrichment,

and equitable considerations. The trial court determined a contract can be implied from the relationship based upon Bright's control over Kuehl and the fact that her expenditures for her own benefit outweighed her contribution, and thus entitled Kuehl to relief.

■ To recover under the theory of implied contract, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. *Biggerstaff v. Vanderburgh Humane Society, Inc.* (1983), Ind.App., 453 N.E.2d 363, 364. Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value. *Cole v. Cole* (1988), Ind. App., 517 N.E.2d 1248, 1250.

Unlike in *Glasgo* and *Chestnut* where the petitioners' sought their share in the assets accumulated during the cohabitation, here Kuehl seeks damages for Bright's alleged misuse of his funds and injuries sustained during the course of the cohabitation.

Our review of the record reveals Bright and Kuehl commingled their funds upon deposit into Kuehl's checking account. The record indicates that Bright regularly used Kuehl's checking account for various payments of expenses. The record does not indicate that Kuehl attempted to prevent Bright's actions until the relationship soured. The record does not support the notion that Kuehl provided these monies to Bright with the expectation that she would return the amount of money she spent on expenses during the course of their cohabitation or that Bright impliedly or expressly requested these benefits.

As such, we determine, based upon the rationale in *Glasgo,* that these particular circumstances do not establish that Kuehl is entitled to relief based upon a theory of implied contract. We therefore reject the trial court's reliance upon an implied contract theory to award Kuehl relief.

**6.** We note that Bright raises sufficiency of the    evidence as the fourth issue in her brief.

Bright also contends that the trial court erred in applying the doctrine of unjust enrichment. To prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.[7] *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, 408, *reh. denied, cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. Principles of equity prohibit unjust enrichment of a party who accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. *Olsson v. Moore* (1992), Ind.App., 590 N.E.2d 160, 163, *reh. denied.*

Here, Bright and Kuehl moved in together and shared their expenses. They commingled their funds and essentially handled their finances together. Although Kuehl contributed a greater amount financially, we cannot conclude that Bright was unjustly enriched by her actions in light of the fact that Kuehl retained much of the assets acquired during the cohabitation. While we acknowledge that unjust enrichment is a remedy available to a party who has cohabitated with another, we do not agree with the trial court that Kuehl made a showing that Bright was unjustly enriched. We therefore conclude that the trial court's reliance upon unjust enrichment to afford Kuehl relief was inappropriate.

In sum, we conclude that the circumstances before us do not afford Kuehl relief based upon any equitable theory, and we reverse the trial court's judgment of compensatory damages in his favor.

## II.

### Punitive Damages

Bright contends that the trial court erred in awarding Kuehl punitive damages.[8] Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, over-zealousness, mere negligence, or other human failing. We will affirm an award of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, a trier of fact could reasonably find such damages were proven by clear and convincing evidence. *Erie Insurance Co. v. Hickman* (1993), Ind., 622 N.E.2d 515, 520–521.

The purpose of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct. *Archem, Inc. v. Simo* (1990), Ind.App., 549 N.E.2d 1054, 1061, *trans. denied, cert. dismissed,* 498 U.S. 1076, 111 S.Ct. 944, 112 L.Ed.2d 1032. There are two primary factors which should be properly considered in reviewing an award of punitive damages: (1) the nature of the tort and the extent of the actual damages sustained; and (2) the economic wealth of the defendant. *Id.*

---

7. We note that unjust enrichment, quantum meruit, contract implied-in-law, constructive contract, and quasi-contract are merely legal fictions invented by the common law courts in order to permit recovery where in fact there is no contract, but where circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise. *Bayh, infra,* at 408 (citing *Clark v. Peoples Sav. & Loan Ass'n* (1943), 221 Ind. 168, 171, 46 N.E.2d 681, 682).

8. Bright also argues that the trial court was prevented from awarding Kuehl punitive damages because he only requested treble damages in his complaint. Attached to his appellee brief, Kuehl annexed a copy of his amended complaint which specifically prayed for relief of punitive damages. In her reply brief, Bright erroneously states that the "record of proceedings contains a verbatim presentation of the case" and that the record does not indicate that the issue of punitive damages was ever properly submitted to the trial court. Appellant's Reply Br. at 4. However, we note that parts of the record which are not transmitted to the court on appeal shall nevertheless be a part of the record on appeal for all purposes. Ind.Appellate Rule 7.2(B); *Lowry v. Lowry* (1992), Ind.App., 590 N.E.2d 612, 618, n. 2, *trans. denied.* Thus, the amended complaint alleging punitive damages is part of the record and the issue was properly submitted to the trial court. As such, we determine that Bright's contention that the trial court improperly awarded Kuehl punitive damages on the grounds that he only specifically plead treble damages is without merit.

 A party must establish actual damages before he may recover punitive damages and the grant of affirmative equitable relief will also support a punitive damage award. *Grimes v. Jones* (1991), Ind.App., 567 N.E.2d 858, 859, *trans. denied.* However, the rule allowing punitive damages to be supported by affirmative equitable relief must be strictly construed. *Id.*

Because we determine that Kuehl was not entitled to compensatory damages because of his failure to make a showing on his claims for equitable relief, his judgment for punitive damages cannot stand. *Sullivan v. American Cas. Co. of Reading, PA* (1992), Ind., 605 N.E.2d 134, 140; *Grimes, supra,* at 859–860.

 Notwithstanding our reversal of compensatory damages, we note that punitive damages are awarded upon a showing of intentional conduct which focuses on the defendant's state of mind. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448, 458, *reh. denied.* As indicated *supra*, the record shows that the parties impliedly agreed to share living expenses during their cohabitation as exhibited by Kuehl's decision to turn over his credit cards and checkbook for Bright's use. Moreover, the record indicates that Kuehl and Bright planned to marry and that Bright had purchased a wedding ring for Kuehl. Such circumstances do not show that Bright moved in with Kuehl in an attempt to intentionally defraud him or to maliciously exhaust his assets.

As such, we conclude that the evidence does not clearly and convincingly show that Bright acted in a manner warranting the imposition of punitive damages. Accordingly, we reverse the trial court's award of punitive damages in Kuehl's favor.

Reversed and remanded with instructions to the trial court to vacate the judgments of compensatory and punitive damages in Kuehl's favor.

FRIEDLANDER, J., concurs.

GARRARD, J., dissents and files separate opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. I do not disagree with the majority's statement of the law. Certainly, the evidence is such that the court might have found no implied contract/unjust enrichment. The evidence, however, also supports the court's conclusion and I believe the majority is guilty of reweighing the evidence and the reasonable inferences to be drawn therefrom in deciding to reverse. That is not our function.

I would find that punitive damages are not demonstrated by clear and convincing evidence, however, and would vacate that portion of the judgment.