Patricia **FOSTER,** as Personal Representative of the Estate of Donald E. Foster, Appellant–Plaintiff,

v.

**EVERGREEN HEALTHCARE, INC., Evergreen Healthcare Ltd., L.P. d/b/a Pine Tree Manor Symmons Industries, Inc., Arjo Manufacturing Co., Inc., Arjo, Inc. and Gordon Plumbing Services, Inc., Appellees–Defendants.**

No. 49A04–9808–CV–422.

Court of Appeals of Indiana.

Aug. 17, 1999.

H. Kennard Bennett, Severns & Bennett, P.C., Indianapolis, Indiana, Jack Harang, Law Offices of Jack Harang, Mandeville, Louisiana, Attorneys for Appellant.

Patricia Polis McCrory, Thomas G. Safley, Paul C. Sweeney, Harrison & Moberly, Indianapolis, Indiana, Attorneys for Appellees Evergreen Healthcare, Inc. and Evergreen Healthcare, Ltd., L.P. d/b/a Pine Tree Manor.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Patricia Foster ("Patricia"), as personal representative of the estate of her husband Donald E. Foster ("Donald"), appeals the trial court's grant of the motion for partial summary judgment filed by appellees-defendants Evergreen Healthcare, Inc. and Evergreen Healthcare, Ltd., L.P., d/b/a Pine Tree Manor (collectively referred to as "Evergreen") on the issue of punitive damages. Evergreen appeals the trial court's denial of its motion for partial summary judgment with respect to Patricia's claim for breach of contract. We affirm in part, reverse in part, and remand this cause for further proceedings.

### Issues

The parties present several issues for our review, which we combine and restate as follows:

(1) whether the trial court erred in granting Evergreen's motion for

partial summary judgment on the issue of punitive damages; and

(2) whether the trial court erred in denying Evergreen's motion for partial summary judgment with respect to Patricia's claim for breach of contract.

### Facts and Procedural History

The facts relevant to our review indicate that on March 15, 1995, Donald was a resident at Pine Tree Manor, a nursing facility operated by Evergreen and located in Indianapolis, Indiana. Early that morning, an employee of Pine Tree Manor awakened Donald for a whirlpool bath.[1] When the employee lowered Donald into the tub, the water burned Donald over approximately 50 percent of his body. Donald died on September 8, 1995, of unrelated causes.

On March 7, 1997, Patricia filed her second amended complaint ("complaint"), in which she asserted various claims against all named co-defendants, including claims against Evergreen for negligence, gross negligence,[2] breach of contract,[3] and breach of fiduciary duty and duty of good faith and fair dealing; she also sought judgment "in an amount commensurate with the damages suffered by Donald Foster [and] for punitive and/or exemplary damages as allowed by law." On April 30, 1997, Evergreen filed its answer to Patricia's complaint.

On May 4, 1998, Evergreen filed a motion for partial summary judgment on the claims listed above, including the punitive damage claim. In support of its motion on the punitive damage claim, Evergreen cit-

---

1. The whirlpool tub was manufactured by co-defendants Arjo Manufacturing Co., Inc. and/or Arjo, Inc.; the tub's temperature regulation valve was manufactured by co-defendant Symmons Industries, Inc.; and the tub's plumbing equipment was installed by co-defendant Gordon Plumbing Services, Inc.

2. Patricia subsequently filed a motion to dismiss her claim for gross negligence, and Evergreen's motion for partial summary judg-

ment on this claim was not considered by the trial court.

3. The record indicates that on or about November 6, 1991, Evergreen entered into a written contract for Donald's care; however, the record does not clearly indicate whether Donald or Patricia signed the contract with Evergreen.

ed *Mundell v. Beverly Enterprises–Indiana, Inc.,* 778 F.Supp. 459 (S.D.Ind. 1991), which is the only decision to date that has interpreted Indiana's penultimate version of its "survival statute."[4] In *Mundell,* Judge Tinder held that the survival statute prohibits a personal representative from seeking punitive damages in a personal-injury action brought on behalf of the decedent's estate. Evergreen also argued that the alleged breach of contract was actually an alleged breach of a duty of care sounding in negligence, and that Patricia could not sue both in contract and in tort for the same claim.

Patricia filed her response to Evergreen's motion on June 25, 1998. With respect to the issue of punitive damages, Patricia asserted that the *Mundell* court had incorrectly interpreted Indiana's survival statute, which "clear[ly] and unambiguous[ly]" allows for the recovery of punitive damages; she also argued that under *Mundell,* "wrongdoers would merely need to outlast the frail or aged claimant and escape the imposition of punitive damages that might otherwise result from trial." As for the breach-of-contract claim, Patricia contended that Ind. Trial Rule 8(E)(2) "clearly allows a complaint to state alternative theories of recovery," and that "the contractual claims of the plaintiff remain unique from the claims of negligence" because of the defendant's alleged failure to provide certain care and services in conformity with the contract itself and with applicable Medicaid and Medicare regulations. Evergreen filed a reply to Patricia's response on July 6, 1998.

The trial court conducted a hearing on Evergreen's motion for partial summary judgment on July 9, 1998. On July 31, 1998, the trial court issued an order granting Evergreen's motion with respect to Patricia's claims "for breach of fiduciary duty, duty of good faith, fair dealing, and punitive damages" and denied the motion with respect to her breach-of-contract claim. The trial court specifically found that "[p]unitive damages cannot be recovered under the Indiana Survival Statute," and that "it is entirely proper for a plaintiff to seek recovery in both tort and contract, or to plead in the alternative."

On August 14, 1998, Patricia filed a motion to certify the trial court's interlocutory order for appeal pursuant to Ind. Appellate Rule 4(B)(6) and Ind. Trial Rule 56(C) on the issue of punitive damages, which was granted by the trial court on August 17, 1998.[5]

### Discussion and Decision
#### *Standard of Review*

 "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 936 (Ind.Ct.App.1996); *see* T.R. 56(C) (summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-mov-

---

4. IND.CODE § 34–1–1–1 (amended and recodified in 1998 as IND.CODE § 34–9–3–4).

5. For the sake of completeness, we note that on August 24, 1998, appellant filed a petition with this Court to file an interlocutory appeal, which we denied on September 2, 1998, because the trial court's order certifying the issue of punitive damages for appeal had rendered its order granting partial summary judgment on this issue a final appealable or-

der pursuant to T.R. 56(C); we therefore directed appellant to treat her appeal as an appeal from a final judgment. On December 2, 1998, appellees filed a petition with this Court to certify the trial court's interlocutory order denying their motion for partial summary judgment on the breach-of-contract claim and to consolidate their appeal with that of appellant; we granted appellees' petition on December 21, 1998.

ing party. *Bamberger*, 665 N.E.2d at 936. This Court will affirm a trial court's grant of summary judgment if it is sustainable on any theory supported by the designated evidence. *Id.* The specific findings entered by the trial court in this case may aid appellate review, but they are not binding on this Court. *Five Star Concrete, L.L.C. v. Klink, Inc.*, 693 N.E.2d 583, 585 (Ind.Ct.App.1998). Finally, the party appealing the trial court's denial or grant of summary judgment bears the burden of persuading this Court that the trial court erred. *City of New Haven v. Chemical Waste Management of Indiana, L.L.C.*, 701 N.E.2d 912, 922 (Ind.Ct.App.1998), *trans. denied* (1999).

### I. Punitive Damages and Indiana's Survival Statute (IND.CODE § 34–9–3–4)

■ "At common law, actions Ex delicto [6] did not survive the death of either party." *Merimee v. Brumfield*, 397 N.E.2d 315, 316 (Ind.Ct.App.1979). This rule has been materially modified over the years by both statutory enactments and court decisions. *Id.* IND.CODE § 34–1–1–1, which remained essentially intact from 1959 until 1989, was entitled **Personal representative; continuing action,** and reads in relevant part as follows:

Provided, however, that when a person receives personal injuries caused by the wrongful act or omission of another and thereafter dies from causes other than said personal injuries so received, the personal representative of the person so injured may maintain an action against the wrongdoer to recover damages resulting from such injuries, if the person so injured might have maintained such action, had he or she lived; but provided

further, that the personal representative of said injured person shall be permitted to recover only the reasonable medical, hospital and nursing expense and loss of income of said injured person, resulting from such injury, from the date of the injury to the date of his death.

In reading the plain language of this statute, it is obvious that a personal representative could not seek punitive damages in a personal-injury action on behalf of the decedent's estate, but could recover only the compensatory damages specifically enumerated therein.

■ By way of explanation, "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct.App.1995). "The purpose of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct." *Id.*

IND.CODE § 34–1–1–1 was amended in 1989, and the survival statute portion excerpted above was significantly modified and designated as subsection (d):

(d) If a person receives personal injuries caused by the wrongful act or omission of another and subsequently dies from causes other than those personal injuries, the personal representative of the decedent who was injured may retain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to

---

**6.** "Ex delicto" may be defined as "[f]rom a delict, tort, fault, crime, or malfeasance." BLACK'S LAW DICTIONARY 567 (6th ed.1990). As an additional note, *Merimee* includes an informative survey of Indiana's survival statutes from 1852 until 1979; however, we need not plumb its historical depths to resolve the issues in the case at bar. A so-called "survival statute," which enables a personal representa-

tive to initiate a personal-injury action for a wrongful act or omission that did not result in the decedent's death, is distinguishable from a "wrongful death statute," which allows a personal representative to bring an action for a wrongful act or omission that did cause the death of the decedent. *See* IND.CODE § 34–23–1–1 (wrongful death statute; formerly IND. CODE § 34–1–1–2).

recover had the decedent lived. These damages inure to the exclusive benefit of the decedent's estate.

In 1998, IND.CODE § 34–1–1–1(d) was amended and recodified as IND.CODE § 34–9–3–4, which reads as follows:

### 34–9–3–4 Action by decedent's representative based on personal injuries causing death

Sec. 4. (a) This section applies when a person:

(1) receives personal injuries caused by the wrongful act or omission of another; and

(2) subsequently dies from causes other than those personal injuries.

(b) The personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover *all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived.* The damages inure to the exclusive benefit of the decedent's estate.

(Emphasis added.) The italicized language, which first appeared in the 1989 amendment of the survival statute, forms the crux of the parties' disagreement on the question of punitive damages and has been interpreted only by Indiana's Southern District Court in *Mundell.*

▮▮▮ This Court's "foremost objective in construing a statute is to determine and to give effect to the intent of the legislature." *WorldCom Network Services, Inc. v. Thompson,* 698 N.E.2d 1233, 1238 (Ind.Ct.App.1998), *trans. denied* (1999). We are not bound by the trial court's interpretation, "but must make an independent legal determination as to the meaning of the statute and its application to the instant facts." *Id.* In the instant case, the trial court understandably adhered to Judge Tinder's interpretation of IND.CODE § 34–1–1–1. Nevertheless, "we are not bound by federal court decisions in their interpretations of Indiana law"; rather, we give them "respectful consideration"

to assist us "in coming to the ultimate conclusion of what the law is in Indiana on a particular issue." *Miller v. Dilts,* 463 N.E.2d 257, 263 (Ind.1984).

▮▮▮ Because the survival statute is in derogation of the common law, it must be strictly construed. *See Estate of Miller v. City of Hammond,* 691 N.E.2d 1310, 1312 (Ind.Ct.App.1998), *trans. denied* (wrongful death statute). This Court "must examine the structure of the statute as a whole." *WorldCom Network Services,* 698 N.E.2d at 1238. "It is a rule of statutory construction that the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication." *Chavis v. Patton,* 683 N.E.2d 253, 258 (Ind.Ct.App. 1997). We must presume that the legislature is aware of the common law, "and a statute will not be construed as changing the common law farther than the import of its words." *Id.* "An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or, (2) where the two laws are so repugnant that both in reason may not stand." *Irvine v. Rare Feline Breeding Center, Inc.,* 685 N.E.2d 120, 123 (Ind.Ct.App. 1997), *trans. denied* (1998).

▮▮▮ We presume that the General Assembly "intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals." *State v. CSX Transp., Inc.,* 673 N.E.2d 517, 519 (Ind.Ct.App.1996). "We also presume that the legislature would not intend an unreasonable or absurd result." *Chesnut v. Roof,* 665 N.E.2d 7, 10 (Ind.Ct.App.1996). However, we cannot and do not engage in statutory interpretation unless the statutory language is ambiguous, or susceptible to more than one interpretation. *Id.* If the statute in question is not ambiguous, "we must give effect

to the plain, ordinary, and usual meaning of the words of the statute." *Id.*[7]

In examining the language of IND. CODE § 34–1–1–1, Judge Tinder observed, "The new language allows recovery by the decedent's personal representative of any damages resulting from personal injury which the decedent could have recovered had he lived. While punitive damages are not explicitly excluded, they are also not explicitly included." *Mundell*, 778 F.Supp. at 462. In construing the statute, Judge Tinder also stated,

> While the legislature clearly meant to broaden the compensatory damages recoverable under the survival statute, it would presume too much to interpret the statute so broadly as to allow recovery of punitive damages without a direct statement from the legislature to this effect. The plain and ordinary meaning of the phrases "all damages" and "all damages resulting before the date of death" suggest that recovery under the survival statute includes all damages, compensatory and punitive, which the decedent would have been able to recover himself if he were alive. However, the statute must be interpreted as a whole. The phrase continues with "all damages resulting before the date of death from those injuries...." [Footnote omitted.] The damages which are recoverable are those resulting from the personal injuries inflicted on the decedent prior to his death. Unlike compensatory damages, punitive damages do not result from personal injury.... Because punitive damages do not result from personal injury and because they

serve a different purpose altogether than the compensatory damages the statute allowed in previous versions, it seems unlikely that the legislature intended to provide for their recovery without expressly stating so in the statute.

*Id.* at 462–463.

Nevertheless, a fundamental rule of statutory construction is that "an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed." *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind.1999). "Such an amendment raises the presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly." *Id.* In the case of the survival statute, we do not see how the legislature could have made a more conspicuous change of both substance and intent than its 1989 and 1998 amendments to IND.CODE § 34–1–1–1.

Fully mindful of the legislative history of the survival statute and the interpretative limitations imposed on both the legislature and the courts by Indiana's common law, we must respectfully disagree with Judge Tinder's interpretation of IND.CODE § 34–1–1–1 for the simple reason that we do not find the statute to be ambiguous and consequently in need of judicial interpretation.

As mentioned above, a personal representative may maintain an action under IND.CODE § 34–1–1–1 to recover "*all* damages resulting before the date of death from those injuries that the decedent

---

7. We also note that when construing a statute, we may look to the titles and the headings of the statute and to the grammatical structure of the clause or sentence in issue. *City of Evansville v. Zirkelbach*, 662 N.E.2d 651, 653–654 (Ind.Ct.App.1996), *trans. denied*. Although we need not construe the survival statute in the instant case because of its grammatical clarity, we admit to being perplexed by the title conferred upon it by the legislature: **Action by decedent's representative based on personal injuries *causing death*.**

(Italicized emphasis supplied.) However, the statute specifically applies when the decedent has received personal injuries "caused by the wrongful act or omission of another" and "subsequently dies *from causes other than those personal injuries*." (Emphasis supplied.) Although we would not presume to invade the well-defined legislative province of the General Assembly, we respectfully submit that a different title may be more descriptive of both the sum and substance of IND.CODE § 34–9–3–4.

would have been entitled to recover had the decedent lived." (Emphasis supplied.) We agree with Patricia that the word "all" cannot be "parsed" but may be "qualified," which the legislature obviously decided not to do when it amended and effectively broadened the strictly compensatory scope of the pre–1989 survival statute. We also agree that punitive damages may not arise in the absence of an injury; indeed, "[a] party must establish actual damages before he may recover punitive damages." *Bright*, 650 N.E.2d at 317. Although Judge Tinder may have been correct in stating that punitive damages do not *result* from personal injury and instead arise from a defendant's egregious conduct, we cannot agree that the legislature did not intend to include punitive damages among "all" the damages "resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived."[8] Indeed, had Donald lived, he unquestionably *would have been* entitled to seek punitive damages as a means of punishing Evergreen for its allegedly oppressive conduct that may have caused his injuries.

 Our decision is further supported by sound public policy.[9] As Patricia correctly observes, a tortfeasor would merely have to outlast a dying potential plaintiff to avoid liability for punitive damages under *Mundell*. The legislature may have been heedful of this absurd result when it amended the survival statute that had pre-

viously allowed recovery for "only the reasonable medical, hospital and nursing expense and loss of income" of the injured person. IND.CODE § 34–1–1–1 (repealed). The General Assembly has not wrought similar changes on Indiana's wrongful death statute, which we have held does not permit the recovery of punitive damages for a wrongful-death claim. *See* IND.CODE § 34–23–1–1; *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1057 (Ind.Ct. App.1990).

Finally, Evergreen argues that the legislature has acquiesced in the *Mundell* court's interpretation of the survival statute, as evidenced by its failure to amend the statute in response to the Southern District Court's holding. Although we do grant "respectful consideration" to our federal colleagues' interpretation of Indiana law, we are not bound by their decisions and do not find the legislature's inaction to be dispositive on the question of recovering punitive damages under the survival statute. *See Miller*, 463 N.E.2d at 263 (weight of federal interpretation of Indiana law); *Beer Distributor of Indiana, Inc. v. State ex rel. Alcoholic Beverage Commission*, 431 N.E.2d 836, 840 (Ind.Ct.App. 1982) (legislative acquiescence "is a useful tool of statutory construction," but is not a sufficient independent basis to affirm or reverse a judgment); *cf. Heffner v. White*, 221 Ind. 315, 318–319, 47 N.E.2d 964, 965 (1943):

---

**8.** During the hearing on Evergreen's motion for partial summary judgment, Patricia's counsel remarked, "I guess my problem is . . . that the reliance upon this phrase, '*from these injuries[,]*' suggests something that's not there. I mean it suggests a [subtlety] in the law which would be remarkable, given the clarity of the language in the law." (Emphasis in original.) We could not agree more with this statement. Punitive damages cannot be recovered "in a vacuum" without the existence of *both* allegedly egregious conduct *and* an alleged injury; one cannot focus exclusively on a defendant's conduct in discussing either the concept of punitive damages or the plain meaning of the survival statute.

**9.** Evergreen asserts that Patricia's "discussion of public policy and 'damages following the claim and not the claimant' have a place only in the legislature when and if the statute is amended again [and] not in a[c]ourt of law." As noted above, this Court's "foremost objective in construing a statute is to determine and to give effect to the intent of the legislature." *WorldCom Network Services*, 698 N.E.2d at 1238. Although we hold that IND. CODE § 34–9–3–4 does not require judicial interpretation because of its lack of ambiguity, we are nevertheless fully aware that "[w]e may not read into the statute that which is not the expressed intent of the legislature." *United Farm Bureau Mut. Ins. Co. v. Steele*, 622 N.E.2d 557, 561 (Ind.Ct.App.1993).

We also have many decisions of this court holding that the failure of the Legislature to change a statute after a line of decisions of a court of last resort giving the statute a certain construction amounts to an acquiescence by the Legislature in the construction of the court and that such construction should not then be disregarded or lightly treated. [Citations omitted.]

We respectfully observe that the Southern District Court of Indiana is not a court of last resort, nor have the post–1989 versions of the survival statute been the interpretative focus of a "line of decisions" by our supreme court.

In summary, then, we hold that IND. CODE § 34–9–3–4, Indiana's survival statute, does allow for the recovery of punitive damages by the personal representative of the decedent's estate.[10]

## II. Breach–of–Contract Claim

 As the trial court stated in its order denying Evergreen's motion for partial summary judgment with respect to Patricia's breach-of-contract claim, "it is entirely proper for a plaintiff to seek recovery in both tort and contract, or to plead in the alternative." *See* T.R. 8(E)(2) ("A pleading may set forth two [2] or more statements of a claim or defense alternatively or hypothetically, either in one [1] count or defense or in separate counts or defenses."); *Strong v. Commercial Carpet Co., Inc.,* 163 Ind.App. 145, 150–151, 322 N.E.2d 387, 390–391 (1975), *trans. denied* (plaintiff's personal injuries caused by tripping over exposed tacking strip left by carpet installers):

> By sustaining Commercial's motion for judgment on the evidence as to Strongs' actions in contract, the trial court effectively forced the Strongs to elect the tort remedy and precluded recovery on the contract theory. While this may be

an appropriate result in a proper case, it does not so appear here.

> Although the authority on the subject is minimal, it is apparent that in a situation such as that here, the plaintiff may elect to bring an action in tort rather than contract, but such an election is not mandatory.

> The line of division between tort and contractual liability developed early and has persisted despite the ridicule the distinction receives. The distinction most prevalent is that of nonfeasance and misfeasance. This distinction draws a seemingly valid line between the complete nonperformance of a promise, which is said to be only a matter of contract, and a defective performance, which may also be a matter of tort. It is generally held that where the defendant has done something more than remain inactive and is charged with a misfeasance, the plaintiff may seek recovery in tort. [Citation omitted.] However, it does not follow, nor can any authority be found in support of the proposition that if both remedies are available to a plaintiff, he must proceed in tort. [Ind. Trial Rule 8] expressly permits a plaintiff to seek relief on more than one theory, allowing him to plead as many separate causes of action as he desires, or to plead in the alternative. Thus, it was entirely proper for the Strongs to seek recovery in both tort and contract. [Citation omitted.]

In *Strayer v. Covington Creek Condominium Ass'n,* 678 N.E.2d 1286 (Ind.Ct. App.1997), upon which Evergreen relies to support its argument that the trial court should have granted its motion for summary judgment on Patricia's breach-of-contract claim, we were compelled to determine whether Strayer's action sounded in contract or in tort because a member of an unincorporated association could not then sue the association for negligence un-

---

**10.** Because we reverse the trial court's ruling with respect to the issue of punitive damages, we need not address Patricia's relevant constitutional arguments or Evergreen's counter-arguments regarding her possible waiver of these issues.

der Indiana law. *See id.* at 1287–1288. No such exigent circumstance is present in the case at bar. Although the contract may indeed offer some guidance concerning the requisite standard of care owed by Evergreen to its nursing facility residents, and although the elements of the negligence and contract claims may overlap, Evergreen has failed to demonstrate that Patricia cannot plead or attempt to recover under both theories. *See Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 520 (Ind.1993) ("an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries."). The trial court will properly instruct the jury on the relevant law at the initial and final stages of the proceedings, and Evergreen may move for judgment on the evidence on either or both of the claims under Ind. Trial Rule 50 at the appropriate juncture.

In summary, we affirm the trial court's denial of Evergreen's motion for partial summary judgment on the issue of Patricia's breach-of-contract claim.

## Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed in part with respect to its denial of Evergreen's motion for partial summary judgment on the issue of Patricia's breach-of-contract claim and reversed in part with respect to the issue of punitive damages; we therefore remand this cause to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER and RUCKER, JJ., concur.