## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 22 2017, 9:24 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin K. Clouser
Noel Law
Kokomo, Indiana

ATTORNEY FOR APPELLEE

David Rosselot
Rosselot Law Office
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Adams,

*Appellant-Defendant,*

v.

Amber Baker,

*Appellee-Plaintiff.*

May 22, 2017

Court of Appeals Case No.
34A05-1607-PL-1598

Appeal from the Howard Circuit Court

The Honorable Lynn Murray, Judge

Trial Court Cause No.
34C01-1411-PL-1011

**Najam, Judge.**

# Statement of the Case

Ryan Adams appeals the trial court's judgment in favor of Amber Baker on Baker's complaint for replevin and damages. Adams presents two issues for our review, which we restate as follows:

1. Whether the trial court erred when it concluded that the parties had an implied contract regarding the money Baker spent on bail for Adams and on accessories for Adams' truck.

2. Whether the trial court erred when it did not offset the judgment by the amount Adams had paid for living expenses when he and Baker lived together.

We affirm.

# Facts and Procedural History

From August 2011 to February 2014, Adams and Baker were involved in a romantic relationship and lived together. In August 2011, Adams and Baker bought a house in Kokomo on contract. Baker paid $3,000 for the down payment, plus $500 for a pet deposit. Adams and Baker began to make extensive renovations to the house. Baker paid a total of $1,459.49 towards "materials used in the remodeling." Appellant's App. Vol. II at 10. Adams and Baker also bought several new appliances that were financed through H.H. Gregg. Baker and Adams paid $2,136.25 and $1,148, respectively, towards the balance for the appliances.

In February 2012, Adams was arrested for driving while intoxicated. After consulting with Adams' mother, Baker paid $866.31 to bail Adams out of jail. Adams did not repay Baker that money. From April through July 2013, Baker paid "for improvements" to Adams' truck, such as tires, a lift, lights, and a grill. *Id.* at 11. Baker spent a total of $3,525.23 for those items. Adams did not repay Baker that money.

Baker moved out of the house in February 2014. On November 17, Baker filed a complaint for replevin and damages against Adams alleging in relevant part that Adams had been unjustly enriched by the money she had spent on the house, appliances, Adams' bail, and Adams' truck. In his answer and counterclaim, Adams alleged that Baker had been unjustly enriched by living in the house with Adams without contributing to the rent or utility payments. In her answer to Adams' counterclaim, Baker alleged that Adams would have paid the same amount in rent had Baker not lived there, and she stated that she helped to pay some of the utilities, taxes, and "other household expenses." *Id.* at 19.

Following an evidentiary hearing, the trial court entered findings and conclusions as follows:

> 1. Amber Baker (herein "Amber") and Ryan Adams (herein "Ryan") were involved in a romantic relationship from August 2010 to February 2014. During most of that time, from August 2011 through February 2014, they cohabitated and shared living expenses. The parties were never married, and have no children together.

2. Both parties were employed, and maintained separate bank and credit card accounts. During their cohabitation, each contributed his or her individual assets and income to household expenses and items for the home.

3. In August 2011, they jointly entered into a contract to purchase residential real estate located at 1913 Misty Autumn Lane, Kokomo. Amber paid the required downpayment of $3000.00 plus pet deposit of $500.00. They subsequently completed the purchase of the real estate, and then when their relationship ended, Amber deeded and released her interest in the property to Ryan. He currently owns and occupies the real estate.

4. While residing together in the home, Ryan paid all the monthly contract and mortgage payments, except one paid by Amber. Ryan also paid all the property tax payments except one paid by Amber. Both parties contributed to utility payments.

5. After purchasing the home, Ryan and Amber extensively remodeled the bathrooms. Amber paid a total of $1,459.49 for materials used in the remodeling, $588.94 for purchases from Menards, and $870.55 for purchases from Home Depot.

6. After purchasing the home, new appliances were purchased and installed. Of the cost for the appliances purchased from H.H. Gregg and financed through G.E. Capital, Amber made payments totaling $2,136.25, and Ryan made payments totaling $1,148.00.

7. When Amber left the property in February 2014, she took various items of furnishings and personal property, while leaving at the home other items of personal property and appliances. Among the items Amber took were a Samsung 55" television and Ipad purchased from Best Buy. Among the items left at the residence were an entertainment center purchased from Walmart, a desk chair, computer monitor and tower.

8. In February 2012, Ryan was arrested for driving a vehicle while intoxicated. Amber paid bail for Ryan to be released from jail in the sum of $866.31, which funds were not returned or repaid to Amber.

9. During the period April through July 2013, with Ryan's consent and knowledge, Amber purchased items for Ryan for improvements to his truck, including a set of tires, lift, lights, and grill, which items totaled $3,525.23. Said purchases were not intended as a gift. Ryan has not reimbursed any said funds expended by Amber for these purchases.

10. On November 17, 2014, Amber initiated this action by filing a complaint for replevin and for damages, seeking certain items of personal property and a judgment for funds she had expended for or to the benefit of Ryan.

11. On January 5, 2015, Ryan filed an answer and counterclaim, seeking a judgment or credit for funds he had expended for or to the benefit of Amber.

12. A bench trial was held and concluded May 3, 2016. The court took all matters under advisement pending a written order.

13. Indiana law provides "a party who cohabitates with another person without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment." *Bright v. Kuehl*, 650 N.E.2d 311, 315 (Ind. Ct. App. 1995), *reh'g denied*; *Turner v. Freed*, 792 N.E.2d 947, 950 (Ind. Ct. App. 2003).

* * *

19. In the case here, Amber expended sums for a real estate down payment, as well as financed extensive remodeling costs and new appliances at the time the parties had an expectation of sharing the property as a residence. In fact, the parties shared the

benefit of the real estate during their cohabitation. Since their break up, Ryan has retained the real estate with the improvements and appliances to his sole benefit. To allow Ryan to retain the benefit without restitution to Amber would be unjust.

20. The court finds Amber is entitled to recover from Ryan the $3,500.00 she paid as a down payment for the real estate, $1,459.49 in costs she paid for remodeling the home, and $2,136.55 she paid towards the purchase of appliances that have remained in the home.

21. The court further finds Amber has shown there was an implied contract for reimbursement of the $866.31 she paid for Ryan's bail after his arrest in 2012.

22. The court further finds Amber has shown there was an implied contract for reimbursement of the $3,525.23 she paid for improvements to Ryan's truck in 2013.

23. *The court declines to find that either party has a viable claim under contract or equitable grounds against the other for recovery of other payments made such as for household and living expenses, including mortgage, utilities, or tax payments made. Both benefitted from these payments for expenses incurred during their cohabitation.*

24. The court also declines to find Ryan is entitled to payment or a credit from Amber for the rental value of residence during the parties' cohabitation.

25. The court further finds and orders Amber is entitled to the entertainment center currently in Ryan's possession. She shall retain the Samsung television.

26. The court further finds and orders Ryan shall be entitled to the Ipad currently in Amber's possession. He shall retain the desk chair, computer tower and monitor.

26. Except as specifically provided herein, each party shall retain all other items of personal property currently in his or her possession.

27. Based upon the above, Amber is awarded a judgment against Ryan in the sum of $11,487.58. It is ordered, adjudged, and decreed, the Defendant Ryan Adams shall pay the sum of $11,487.58 to the Plaintiff Amber Baker, said sum reduced to judgment.

*Id.* at 36-40 (emphasis added). This appeal ensued.

# Discussion and Decision

### *Standard of Review*

Where, as here, the trial court issues findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076-77 (Ind. Ct. App. 2011), *trans. denied*. First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *Id.* at 1077. We will reverse only if there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We review the findings of fact using a clearly erroneous standard. *Id.* Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made. *Id.* We review the conclusions of law using a de novo standard. *Id.*

## Issue One: Implied Contract

[8] Adams first contends that the trial court erred when it concluded that he had impliedly contracted to reimburse Baker for the money she spent on his bail and on accessories for his truck. To recover under the theory of implied contract, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. *Bright v. Kuehl*, 650 N.E.2d 311, 315 (Ind. Ct. App. 1995). Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value. *Id.*

[9] Adams' sole contention on this issue is that Baker had intended the bail money and truck accessories as gifts. But Baker testified that Adams had agreed to pay her back for those expenditures. Adams' arguments on appeal amount to nothing more than a request that we reweigh the evidence, which we will not do. The trial court did not err when it concluded that Adams had impliedly contracted to reimburse Baker for the money she spent on bail and truck accessories.

## Issue Two: Setoff

[10] Adams next contends that,

> [i]f allowing Adams to accept the benefit of Baker's payments and purchases result[ed] in an unjust enrichment on his behalf, as ruled by the trial court, then Baker's expense[-]free lifestyle during the period of cohabitation would also be an unjust

enrichment. Therefore, Adams' contribution of mortgage payments, utility payments, and tax payments should be taken into account and offset any judgment owed to Baker.

Appellant's Br. at 9. In essence, Adams contends that the trial court's Finding 23 is not supported by the evidence. Further, without any citation to the record on appeal, Adams alludes to an "implied contract that existed between the parties as it pertained to mortgage, utility, and tax expenses," which, he maintains, also supports a setoff. *Id.* We cannot agree.

[11] Adams does not support this contention with citations to the record or cogent argument. Indeed, Adams does not include in his brief on appeal any calculation of the amount of setoff to which he claims to be entitled. Adams merely states, without citation to evidence in the record, that his contributions "should be taken into account and offset *any* judgment owed to Baker." *Id.* (emphasis added). To the extent Adams contends that Baker was unjustly enriched as a result of living with him rent-free, again, he asks that we reweigh the evidence, which we will not do.

[12] As Adams correctly states, to recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, *that the plaintiff expected payment from the defendant*, and that allowing the defendant to retain the benefit without restitution would be unjust. *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012) (emphasis added). Adams had the burden to prove that Baker was unjustly enriched, and, thus, he appeals from a negative judgment. *See Smith v. Derm.*

*Assocs. of Ft. Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). Adams does not direct us to any evidence that he expected payment from Baker for rent while she lived with him. Indeed, the evidence shows that the parties shared household and living expenses, with Baker helping to pay utilities and Baker's parents buying Adams and Baker food "most of the time." Tr. at 40. Thus, Adams has not demonstrated that Baker was unjustly enriched.

[13] In contrast, while both parties benefited from sharing their household and living expenses, as the trial court found, Adams "has retained the real estate with the improvements and appliances [purchased by both parties] to his sole benefit. To allow [Adams] to retain the benefit without restitution to [Baker] would be unjust." The trial court did not err when it declined Adams' request to offset his contributions to the parties' household and living expenses against any judgment "and award no money to Baker." Appellant's Br. at 11.

[14] Affirmed.

Bailey, J., and May, J., concur.