**Robert M. O'BRIEN d/b/a Links Mortgage, Appellant–Defendant,**

v.

**1ST SOURCE BANK, Appellee–Plaintiff.**

No. 71A05–0611–CV–677.

Court of Appeals of Indiana.

June 28, 2007.

R. William Jonas, Jr., Hammerschmidt, Amaral & Jonas, South Bend, IN, Attorney for Appellant.

Patrick D. Murphy, Boveri Murphy Rice & LaDue, LLP, South Bend, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Robert M. O'Brien appeals from the trial court's grant of summary judgment on the breach of contract claims of 1st Source Bank ("Bank"). O'Brien presents a single issue for our review, namely, whether the Bank acquired an enforceable lease against O'Brien from the bankruptcy of the Bank's borrower.

We affirm and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On April 7, 1993, O'Brien signed an office building lease ("Lease") with Jefferson Boulevard Partnership ("JBP") for office space in the First Bank Building ("Building") for twenty years. JBP obtained a loan ("Loan") from the Bank and, to secure the Loan, the Bank and JBP entered into a Real Estate Mortgage and Security Agreement ("Mortgage Agreement"), which included an assignment of the Lease. The Bank perfected the assignment of the Lease, as well as the mortgage lien. To evidence the Loan, JBP executed and delivered a promissory note ("Note") to the Bank. When the Note matured and the Loan became due and payable in full, JBP defaulted.

On November 17, 1994, JBP filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana. On December 2, the Bankruptcy Court entered an Agreed Order Regarding Use of Cash Collateral ("Cash Collateral Order"), in which the Bank and JBP stipulated that the Bank had a valid and properly perfected assignment of and security interest in "rents." Appellee's App. at 58. The Cash Collateral Order authorized JBP to use some of the rents to maintain and operate the real estate. JBP and Bank reached a Settlement Agreement with Mutual Releases ("Settlement Agreement"), which the Bankruptcy Court approved in an Order Approving Settlement Agreement ("Settlement Order") on May 22, 1995. That same day, the Bankruptcy Court entered an Order Authorizing and Approving Sale of Estate Property Free and Clear of Liens ("Sale Order") approving JBP's motion to transfer its assets to the Bank, including all of JBP's "rights, title, and interest in and to all existing and future leases." *Id.* at 109. Pursuant to the Settlement Order and Sale Order, JBP transferred "title to all personal and real property owned by the Debtor to First Source." *Id.* at 119. JBP then filed a Debtor's Report of Sale with the Bankruptcy Court, which the Court approved on July 5, 1995.

For more than nine years, since May of 1995, O'Brien has treated the Bank as the lessor of his office in the Building by paying monthly rents directly to the Bank and requesting the Bank's permission to renovate and repair the office. Nonetheless, on November 27, 2004, O'Brien sent the Bank a thirty-day notice letter to terminate the Lease. O'Brien gave the notice of termination pursuant to Paragraph 7(B) of the Lease, which provides as follows:

7. TENANT'S RIGHT TO TERMINATE.

The tenant, or his heirs, executors, administrator, successors or assigns, shall have the right to terminate this lease upon the following terms and conditions:

\* \* \*

B. Commencing upon the fifth anniversary ... the Tenant shall have the right to terminate this Lease at any time upon thirty (30) days written notice to the Landlord and upon payment of a *termination fee equal to the sum of the next twelve monthly rental payments due hereunder* following delivery of the notice of termination. Upon such termination and payment of such termination fee, the Tenant shall not have any further duties, obligations or liabilities hereunder. The Tenant shall have the right to pay the termination fee in a single payment or to pay said fee in twelve equal monthly payments.

*Id.* at 44 (emphasis added). However, in the letter of termination, O'Brien conditioned payment of the termination fee upon "receipt of evidence that: a) the foregoing lease was not discharged during the bankruptcy proceed[ings] of the original Landlord; and b) the foregoing lease was properly assigned to 1st Source Bank." *Id.* at 53. Since sending the termination notice to the Bank, O'Brien has not paid any part of the termination fee.

On January 13, 2006, the Bank filed a claim against O'Brien asserting breach of contract. The Bank filed a motion for summary judgment, and, after a hearing, the trial court granted that motion. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a grant of summary judgment, this court stands in the shoes of the trial court and applies the same applicable standard. *Progressive Constr. & Eng'g. Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1282 (Ind.Ct.App.1989). We will affirm a grant of summary judgment if sustainable on any theory found in the evidence designated to the trial court. *Jacques v. Allied Bldg. Servs. of Ind.*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999).

When the movant's affidavits and other evidence demonstrates the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Id.* Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994). Interpretation of contracts is a question of law. *Underwriting Members of Lloyds of London v. United Home Life Ins. Co.*, 549 N.E.2d 67, 69 (Ind.Ct.App.1990). The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 23–24 (Ind.Ct.App. 1999), *trans. denied.*

O'Brien asserts that the trial court erred as a matter of law when it granted summary judgment in favor of the Bank. Specifically, O'Brien contends that there was no assignment of the Lease from JBP to the Bank before JBP filed a petition for Chapter 11 bankruptcy. As explained below, we agree. However, O'Brien also maintains either that the Lease was "extinguished" during the bankruptcy or that the Lease was not properly assigned and transferred to the Bank during the bankruptcy. Accordingly, O'Brien claims that his termination of the Lease was not subject to the termination fee because he was

merely a holdover tenant. We conclude that the Lease was included in the bankruptcy estate, that the Lease remained intact, that the Lease was properly assigned to the Bank, and that O'Brien is subject to the Lease according to its terms.

### Pre–Bankruptcy Assignment of the Lease

■ The Bank claims that JBP assigned the Lease to the Bank before JBP filed for bankruptcy in November 1994. The Bank argues that, by the Mortgage Agreement executed in December 1993, JBP assigned the Lease and the Bankruptcy Court reaffirmed the assignment in the Cash Collateral Order. O'Brien counters that the assignment of the Lease in the Mortgage Agreement is "not a transfer of ownership of the rents and the leases, but merely the grant of a security interest in them." Reply at 1.

In the Mortgage Agreement, the assignment was a collateral assignment and not an absolute assignment of the Lease. Specifically, the Mortgage Agreement states that JBP "*grants* to 1st Source *a security interest in all of Borrower's* right, title, and *interest in and to all existing and future leases.*" Appellee's App. at 7 (emphases added). Also, in the Cash Collateral Order, the Bankruptcy Court recognized JBP as the lessor of the building when it authorized JBP to use certain portions of the rents to maintain the real estate during the bankruptcy. *Id.* at 62. Thus, we agree with O'Brien that the pre-bankruptcy assignment of the Lease merely granted a security interest to the Bank to secure the Loan.

### Existence of the Lease during Bankruptcy

■ As we have noted, O'Brien contends that the Lease was "extinguished" during the bankruptcy. Specifically, O'Brien argues that the Lease was not assumed by JBP as the bankruptcy debtor, or debtor-in-possession, and, therefore, that the Lease was deemed rejected. O'Brien also claims that a free and clear sale of the Building under Section 363(f) of the Bankruptcy Code extinguished the Lease. *See* 11 U.S.C. § 363(f) (1995). We cannot agree.

The instant that a debtor files a bankruptcy petition, a bankruptcy estate is created by operation of Section 541(a) of the Bankruptcy Code. 11 U.S.C. § 541(a) (1995). Section 541(a) defines the scope of the bankruptcy estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1995). Thus, when JBP filed a petition for relief under Chapter 11, the Lease became a part of the bankruptcy estate pursuant to Section 541(a). The Lease "remains in the estate until it is either disposed of (through sale or abandonment), or until the administration of the estate ends (by closing the case or confirming a Chapter 11 plan)." *In re Resource Tech. Corp.*, 254 B.R. 215, 221 (Bankr.N.D.Ill.2000) (citing Sections 363, 554, and 1141(b) of the Bankruptcy Code).

Under Section 365(a) of the Bankruptcy Code, either a trustee or debtor-in-possession [1] may assume or reject an unexpired lease as part of the bankruptcy estate after a bankruptcy filing. 11 U.S.C. § 365(a) (1995). Generally, however, an

---

1. Although Section 365(a) states assumption or rejection only by the trustee, a debtor-in-possession may assume or reject under Section 365 by operation of Section 1107(a) of the Bankruptcy Code, which provides that "a debtor in possession ... shall perform all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a) (1995).

unexpired lease is not deemed rejected when there is no assumption or rejection. An exception to that rule is Section 365(d)(4) of the Bankruptcy Code, which provides that "an unexpired lease of non-residential real property under which *the debtor is the lessee* ... is deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor," if the trustee does not assume or reject the unexpired lease. 11 U.S.C. § 365(d)(4) (1995) (emphasis added).

Here, O'Brien attempts to extend the application of the automatic rejection provision under Section 365(d)(4) of the Bankruptcy Code to cases where the debtor is the lessor. *See* 11 U.S.C. § 365(d)(4) (1995). But the statutory language of Section 365(d)(4) makes it clear that that Section applies only where the debtor is the lessee. *Id.* And Section 365 neither sets the time period for assumption or rejection of such an unexpired lease under a Chapter 11 bankruptcy nor regards "no assumption" within a certain period as an automatic rejection when the debtor is the lessor. This makes sense where, as here, the debtor's Lease with O'Brien was an asset, not a liability, of the debtor's estate.

■ That a bankruptcy filing has no effect on contract rights and obligations is reflected in the settled law that contracts that are neither assumed nor rejected are deemed to "pass through" the bankruptcy unaffected by the filing. *In re The Penn Traffic Co.*, 322 B.R. 63, 72–73 (Bankr. S.D.N.Y.2005), *rev'd in part on other grounds*, No. 05 Civ. 3755(NRB), 2005 WL 2276879, 2005 WL 2276879 (S.D.N.Y. Sept.16, 2005). If a debtor-in-possession neither assumes nor rejects a lease, "the lease[ ] continue[s] in effect." *In re Greystone III Joint Venture*, 995 F.2d 1274, 1281 (5th Cir.1991). *See also In re Whitcomb & Keller Mortg. Co.*, 715 F.2d 375, 378 (7th Cir.1983) (holding that the "con-

tract remain[s] in effect until [a debtor makes] its decision to assume or reject the contract"). Thus, as JBP neither assumed nor rejected the Lease, the Lease continued in effect throughout the bankruptcy. And here it is clear that the Bankruptcy Court, the Bank, and the debtor-in-possession all recognized that the Lease was included in the bankruptcy estate.

■ O'Brien also contends that the Lease was extinguished by operation of law as a consequence of the Sale Order's "free and clear" sale of the Building. The Bankruptcy Court issued the Sale Order pursuant to Section 363(f), which provides that the trustee or debtor-in-possession may sell property "free and clear of any interest in such property of an entity other than the estate." *See* 11 U.S.C. § 363(f) (1995). In support, O'Brien cites a recent decision of the Seventh Circuit Court of Appeals, which held, on the facts before it, that a "sale order issued pursuant to section 363(f) ... extinguish[ed] the possessory rights bestowed by a lease of the estate's land." *See Precision Indus., Inc. v. Qualitech Steel SBQ, L.L.C.*, 327 F.3d 537, 540 (7th Cir.2003).

In *Precision,* the sale order provided for a sale "free and clear of *all* liens, claims, encumbrances, and interests." *Id.* at 541 (emphasis changed). Here, however, the Sale Order preserved some interests from the free and clear sale by directing a sale "free and clear of any *adverse* liens, encumbrance or other claims." Appellee's App. at 111 (emphasis added). That is, the Lease was not extinguished by the Sale Order because the Lease was not an encumbrance adverse to the Bank, which held both a security interest in the Lease and a mortgage on the underlying real estate. Hence, *Precision* is inapposite.

### Valid Assignment of the Lease

■ Finally, O'Brien contends that, even if the Lease remained in effect during

the bankruptcy, the Lease is nonetheless unenforceable because the Sale Order did not validly assign the Lease to the Bank. Also, O'Brien maintains that he is not collaterally attacking the Sale Order issued by the Bankruptcy Court because the Lease "was not within the set of assets transferred under the Sale Order." Reply at 6. Once more, we cannot agree.

■ As discussed above, upon the commencement of the Chapter 11 bankruptcy, the Lease became property of the bankruptcy estate by operation of Section 541(a) of the Bankruptcy Code. *See* 11 U.S.C. § 541(a) (1995). And whether or not the Lease was assumed under Section 365(a), the Lease was administered as an asset of the bankruptcy estate. *See In re Computer Communications,* 824 F.2d 725, 729 (9th Cir.1987) (rejecting the argument that "[t]he contract ... never became property of the estate because the trustee did not and could not assume it"). Again, the Sale Order expressly authorized "the assignment of all Debtor's rights, title and interest in and to all existing and future leases of the Real Estate." Appellee's App. at 109. "A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *In re Met–L–Wood Corp.,* 861 F.2d 1012, 1017 (7th Cir.1988). As such, O'Brien's argument that the Sale Order's assignment of the Lease to the Bank is somehow invalid is barred. *See id.*

### Conclusion

The designated evidence supports the trial court's conclusion that there are no genuine issues of material fact. Based on the foregoing, we conclude that the Lease was in full force and effect throughout the bankruptcy and that the Bank, as a result

of the Sale Order, obtained a valid and enforceable lease. Consequently, we hold that the Bank is entitled to the termination fee according to the terms of the Lease and that the trial court properly granted summary judgment to the Bank.

■ Finally, in addition to the award of the termination fee, prejudgment interest, and trial attorney's fees, the Bank requests an additional award for its "appellate fees and expenses." Appellant's Brief at 20. "When a contract provision provides that attorney fees are recoverable, appellate attorney fees may also be awarded." *Humphries v. Ables,* 789 N.E.2d 1025, 1036 (Ind.Ct.App.2003) (quoting *Samar, Inc. v. Hofferth,* 726 N.E.2d 1286, 1292 (Ind.Ct.App.2000), *trans. denied* ). And although the term "expenses" can have different meanings, insofar as the costs on appeal are concerned the Bank must proceed in accordance with Indiana Appellate Rule 67, which states in relevant part:

*A. Time for filing motion for costs.* Upon a motion by any party within sixty (60) days after the final decision of the Court of Appeals or Supreme Court, the Clerk shall tax costs under this Rule.

*B. Components.* Costs shall include:

(1) the filing fee, including any fee paid to seek transfer or review;

(2) the cost of preparing the Record on Appeal, including the Transcript, and appendices; and

(3) postage expenses for service of all documents filed with the Clerk.

The Court, in its discretion, may include additional items as permitted by law. Each party shall bear the cost of preparing its own briefs.

*C. Party entitled to costs.* When a judgment or order is affirmed in whole, the appellee shall recover costs....

Ind. Appellate Rule 67.

But to the extent that the Bank seeks litigation costs not contemplated by Appel-

late Rule 67, the Bank may seek such expenses pursuant to a contract provision. *See Weiss v. Harper,* 803 N.E.2d 201, 207–08 (Ind.Ct.App.2003). Here, Paragraph 24(xiii) of the Lease provides as follows:

> Attorney's Fees: In the event of an action or proceeding brought by either party against the other under this Lease the prevailing party shall be entitle[d] to recover all costs and expenses including the fees of its attorneys in such action or proceeding in such amount as the court may adjudge reasonable as attorney's fees.

Appellee's App. at 48. However, the Bank presents no evidence of the amount of appellate attorney's fees and litigation costs it incurred. We therefore remand this issue to the trial court with instructions that it determine a reasonable amount of appellate attorney's fees and litigation costs to be awarded to the Bank pursuant to the Lease agreement.

Affirmed and remanded with instructions.

FRIEDLANDER, J., and RILEY, J., concur.