**Robert S. FOWLER, Appellant–Plaintiff,**

v.

**Sue A. PERRY, Appellee–Defendant.**

**No. 29A02–0501–CV–53.**

Court of Appeals of Indiana.

July 6, 2005.

---

Robert D. King, Indianapolis, for Appellant.

## OPINION

BAILEY, J.

### Case Summary

Appellant–Plaintiff Robert S. Fowler ("Fowler") appeals the trial court's judgment in favor of Appellee–Defendant Sue A. Perry ("Perry"). We affirm in part, reverse in part and remand.

### Issues

In challenging the propriety of the trial court's judgment, Fowler raises two issues, which we restate as:

   I.  Whether the trial court erroneously concluded that he was not entitled to the return of $9,675.68, pursuant to the doctrine of unjust enrichment; and

  II.  Whether the trial court erroneously concluded that Fowler was not entitled to the purchase price of an engagement ring that he had given Perry in contemplation of marriage.

### Facts and Procedural History

From June of 1999 to October of 2000, Fowler and Perry lived together in a house in Missouri. During that time, Fowler and Perry had a son. On October 21, 1999, Fowler purchased an engagement ring for Perry for $5,499.00;[1] however, the two were never married.

In late October of 2000, Perry and her son moved to Indiana, while Fowler remained in Missouri to finish his education. Once Fowler graduated from college, he planned to move to Indiana to be with Perry and their son. From November of 2000 to April of 2001, Fowler gave Perry control of his income. According to Fowler, he did so with the expressed agreement that Perry would pay all of his bills with the money and, further, that "whatever money was leftover was to be saved so that when [he] graduated school, got a job in Indiana and [the two] got married, [they] could buy a house." Tr. at 25.

Perry, however, remembered their oral agreement differently. Perry testified that Fowler gave her his money because he wanted her to "take care of the bills and [their son] so he could concentrate on his school work." *Id.* at 36. Perry also explained that when she and Fowler lived together in Missouri, she was responsible for paying all household expenses.

During the five-month period at issue, i.e., from November of 2000 to April of 2001, Perry had access to $17,784.78 of Fowler's money. Of that sum, Fowler testified that $9,675.68 should have been placed in savings for the couple's future home. Indeed, Fowler testified that the only bills which Perry was authorized to pay with his money were: (1) rent in the amount of $2,489.00; (2) a $60.00 pager; (3) cell phone in the amount of $240.00; (4) a Sears account in the amount of $100.00; (5) a Bank of America card in the sum of $435.00; (6) electricity in the amount of

---

**1.** At trial, Fowler testified that he bought the ring for $4,399.00 because the jeweler gave him $1,100.00 of credit in trade for another piece of jewelry, i.e., a ring.

$94.47; (7) phone in the amount of $280.33; (8) insurance in the sum of $323.30; (9) storage fees in the amount of $177.00; (10) Ford Explorer repair work in the amount of $619.00; (11) a Gateway account in the sum of $271.00; and (12) his personal allowance for the months excluding January and March in the amount of $600.00. In addition, according to Fowler, Perry was authorized to spend $2,420.00 in child support.

By contrast, Perry testified that she placed Fowler's income in her personal bank account and paid all of the bills with the commingled assets. According to her, the money went toward the couple's everyday expenses—i.e., car payments, car insurance, groceries, gasoline, childcare, clothing and food for their son, and books that had been purchased for Fowler. For example, Perry paid a monthly car payment for a vehicle that remained in Fowler's possession, in the amount of $435.00. She also paid for their child's life insurance and repaid a loan for $2,200.00 to her mother on Fowler's behalf. Fowler, however, disputes the amount of this loan. Perry further testified that, at all times pertinent to the present dispute, Fowler did not pay child support and that he did not "have a problem taking care of [his] son." *Id.* at 43.

In April of 2001, Perry informed Fowler that they should stop "seeing each other for a while." *Id.* at 7. Subsequently, Perry attempted to pawn her "engagement ring" because Fowler had not requested it back and she no longer had a use for it. *Id.* at 50. However, at some point during the time that Perry had taken the ring from "jewelry shop to jewelry shop" to pawn it, the ring was stolen from her car. *Id.* at 50. As a result of the theft, Perry received insurance proceeds in the amount of $5,000.00.

On October 25, 2002, Fowler filed a complaint against Perry, seeking, in part, the return of the $9,675.68 and the value of the stolen engagement ring. After conducting a bench trial, the trial court entered a judgment, in relevant part, in favor of Perry. In so doing, the trial court made the following pertinent findings ("Finding I" and "Finding II", respectively):

1. [Fowler] has requested reimbursement of certain sums of money that were paid by him into a joint account that was administered by [Perry.] At this time, the Court will find that the account was a joint account. It was the agreement of the parties that [Perry] should administer the same. Said account co-mingled her funds and [Fowler's] funds. Various joint and individual debts were paid out of the same account. The Court cannot find, from the evidence, any implied or express contract as to the manner in which said funds should be distributed and/or saved for future use. The Court must therefore find in favor of [Perry] and against [Fowler] in this request.

2. [Fowler] has requested the return of one-half of the value of the engagement ring valued at $5,499.00. Although the ring has been identified as an engagement ring, the Court was not presented with any evidence of a proposal for marriage, the time, place or exchange of said marital agreement by [Perry.] The mere identification of the ring as an engagement ring, absent other specific facts establishing that same was given in express contemplation of marriage, is insufficient evidence for the Court to order that the value of the same be returned to [Fowler.] The Court must therefore find in favor of [Perry] and against [Fowler] in this request.

Appellant's App. at 6–7. This appeal by Fowler ensued.

## Discussion and Decision

### I. Standard of Review

Although the trial court entered findings of fact and conclusions thereon, the record does not reflect a request for such findings by either party. Where the trial court enters specific findings of fact and conclusions *sua sponte*, we apply the following two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind.Ct.App. 2002), *trans. denied.* The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839–40 (Ind.Ct.App.2002).

We define the clearly erroneous standard based upon whether the party is appealing a negative judgment or an adverse judgment. *Garling v. Ind. Dep't Of Natural Res.*, 766 N.E.2d 409, 411 (Ind.Ct.App.2002), *trans. denied.* Where, as here, the party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Todd Heller, Inc. v. Ind. Dep't of Transp.*, 819 N.E.2d 140, 146 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

Further, we recognize that findings made *sua sponte* control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

### II. Analysis

On appeal, Fowler argues that the trial court erroneously granted judgment in favor of Perry on his unjust enrichment claim, in the amount of $9,675.68, and on his claim of entitlement to the purchase price of the stolen engagement ring, which he had given to Perry in contemplation of marriage. Before we address these contentions, we observe that Perry did not file an Appellee's Brief. When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee. *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App. 1985). Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Id.* Thus, we may reverse the trial court if the appellant is able to establish prima facie error. *Jones v. Harner*, 684 N.E.2d 560, 562 n. 1 (Ind.Ct.App.1997). In this context, "prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (internal citations omitted). With this standard in mind, we separately address Fowler's arguments.

### A. Unjust Enrichment

In challenging the trial court's judgment as contrary to law, Fowler first contends that Finding I is clearly errone-

ous inasmuch as it contains the following language:

> The Court cannot find, from the evidence, any implied or express contract as to the manner in which said funds should be distributed and/or saved for future use. The Court must therefore find in favor of [Perry] and against [Fowler] in this request.

Appellant's App. at 6. In particular, Fowler argues that Finding I is erroneous because his claim is more appropriately classified as one for unjust enrichment than one for an express or implied contract.

■ In *Bright v. Kuehl,* 650 N.E.2d 311, 315 (Ind.Ct.App.1995), *reh'g denied,* another panel of this Court considered the property claim of a non-marital partner and determined that "a party who cohabitates with another without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment." To prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Id.* Principles of equity prohibit unjust enrichment of a party who accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. *Id.*

In the present case, the record reveals that, after cohabitating with each other for approximately sixteen months and having a child together, Perry moved to Indiana with the couple's son, while Fowler stayed in Missouri to finish his education. The evidence also demonstrates that, from November of 2000 to April of 2001, Fowler gave Perry control of his income in the aggregate amount of $17,784.78. The parties dispute how this income was to be disbursed. According to Fowler, the par-

ties had an express agreement that Perry would pay all *his* bills with the money and that "whatever money was leftover was to be saved so that ... [the two] could buy a house." Tr. at 25. Thus, Fowler testified that $9,675.68 of his income should have been placed in savings for the couple's future home, and not spent on household expenditures. Fowler explained that the only bills which he had authorized Perry to pay with his money were: (1) rent in the amount of $2,489.00; (2) a $60.00 pager; (3) cell phone in the amount of $240.00; (4) a Sears account in the amount of $100.00; (5) a Bank of America card in the sum of $435.00; (6) electricity in the amount of $94.47; (7) phone in the amount of $280.33; (8) insurance in the sum of $323.30; (9) storage fees in the amount of $177.00; (10) Ford Explorer repair work in the amount of $619.00; (11) a Gateway account in the sum of $271.00; (12) his personal allowance for the months excluding January and March in the amount of $600.00; and (13) child support in the sum of $2,420.00.

By contrast, Perry—who had always been responsible for paying the couple's household expenses—testified that Fowler gave her the money because he wanted her to "take care of the bills and [their son] so he could concentrate on his school work." *Id.* at 36. In that vein, Perry testified that the money went toward the couple's everyday expenses, including car payments, car insurance, groceries, gasoline, childcare, clothing and food for their son, and books that had been purchased for Fowler. With the funds at issue, Perry also paid a monthly car payment for a vehicle that remained in Fowler's possession, in the amount of $435.00, as well as their child's life insurance and a loan for $2,200.00 to her mother on Fowler's behalf. Perry further explained that, at all times pertinent to this appeal, Fowler did not pay child

support and that he did not "have a problem taking care of [his] son." *Id.* at 43.

■ From this evidence, the trial court could conclude that Perry used the $9,675.68 to support the household, which included Fowler and the couple's son and, thus, we cannot conclude that Perry was unjustly enriched. Accordingly, Fowler has failed to demonstrate that Finding I is clearly erroneous and that the trial court's judgment in favor of Perry was contrary to law.[2]

### B. Entitlement to the Purchase Price of the Engagement Ring

Fowler next contends that the trial court erroneously concluded that Fowler was not entitled to the purchase price of the engagement ring that he had given Perry in contemplation of marriage. In particular, Fowler maintains that Finding II is clearly erroneous inasmuch as it contains the following language:

> Although the ring has been identified as an engagement ring, the Court was not presented with any evidence of a proposal for marriage, the time, place or exchange of said marital agreement by [Perry.] The mere identification of the ring as an engagement ring, absent other specific facts establishing that same was given in express contemplation of marriage, is insufficient evidence for the Court to order that the value of the same be returned to [Fowler.] The Court must therefore find in favor of [Perry] and against [Fowler] in this request.

■ We address the propriety of this finding in two parts. First, we examine whether the ring at issue constitutes a gift in contemplation of marriage. In so doing, we note that, at trial, both parties referred to the ring as an engagement ring. An "engagement ring" is defined as "a ring given in token of betrothal." WEBSTER'S THIRD NEW INTERNATIONAL Dictionary 751 (2002). The term "betrothal" refers to "a mutual promise or contract for a future marriage." *Id.* at 209. In light of the parties' reference to the ring at issue as an engagement ring, the trial court erred when it found that the evidence was insufficient to prove that such ring was given in contemplation of marriage.

■ Having determined that the engagement ring was given to Perry in contemplation of marriage, we next examine whether, upon the parties' break-up, Fowl-

---

**2.** In his appellant's brief, Fowler seems to assert a second reason that Finding I is clearly erroneous. Specifically, he maintains that the evidence adduced at trial demonstrated an express agreement between the parties regarding how the money at issue was to be disbursed. However, as previously discussed, here, there was no express agreement between Fowler and Perry regarding the funds at issue. Rather, each party had a different interpretation of the oral agreement.

Moreover, Fowler's contention that Finding I is clearly erroneous fails under the doctrine of implied contract. To recover under the theory of implied contract, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. *Bright*, 650 N.E.2d at 315. Any benefit, commonly the subject of pecuniary compensation, which one—not intending it as a gift—confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value. *Id.* Our review of the record reveals that Fowler gave Perry control of his funds and that she commingled them with her income upon deposit into her checking account. Perry used these funds to pay the couple's household expenses and Fowler did not prevent such disbursement of his funds until the relationship ended. Accordingly, the record does not support the inference that Fowler provided the money to Perry with the expectation that she would return it or that Perry impliedly or expressly requested these benefits. *See, e.g., id.*

er was entitled to the return of ring or, in the event that the ring could not be returned, the purchase price of the jewelry. This question is one of first impression in Indiana. *See Linton v. Hasty,* 519 N.E.2d 161, 162 (Ind.Ct.App.1988) (recognizing that no court in Indiana has addressed this issue), *reh'g denied.*

■ It is undisputed that, at some point, Fowler gave Perry the engagement ring that he purchased for $5,499.00 in cash and trade. That said, we must determine whether the ring was intended as an absolute, or a conditional, gift. In addition to the competency of the donor, a valid inter vivos gift—i.e., an absolute gift—occurs when: (1) the donor intends to make a gift; (2) the gift is completed with nothing left undone; (3) the property is delivered by the donor and accepted by the donee; and (4) the gift is immediate and absolute. *Shourek v. Stirling,* 652 N.E.2d 865, 867 (Ind.Ct.App.1995). Thus, once delivery and acceptance of a gift inter vivos occurs, the gift is irrevocable and a present title vests in the donee. *Hopping v. Wood,* 526 N.E.2d 1205, 1207 (Ind.Ct. App.1988), *reh'g denied, trans. denied.* By contrast, a gift is conditional if it is conditioned upon the performance of some act by the donee or the occurrence of an event in the future.

■ The gift at issue in the present case is an engagement ring. In our society, an engagement ring—i.e., a gift incidental to an engagement—is the symbol and token of a couple's agreement to marry. As such, marriage is an implied condition of the transfer of title to the ring and, thus, the gift does not become absolute until the marriage occurs. *See* Elaine Marie Tomko, Annotation, *Rights in Respect of Engagement and Courtship Presents When Marrying Does Not Ensue,* 44 A.L.R.5th 1 (1996). Put another way, marriage is a condition precedent before ownership of an engagement ring vests in the donee. Therefore, in the absence of a contrary expression of intent, an engagement ring is a conditional gift given in contemplation of marriage, and not an inter vivos transfer of personal property.[3]

Having concluded that, in most circumstances, an engagement ring is a conditional gift, we next analyze the rightful ownership of the engagement ring when the condition of marriage is never satisfied. The majority of jurisdictions that have considered the ownership of an engagement ring after the engagement was terminated has adopted a "fault-based" approach, wherein the donor is entitled to the return of an engagement ring only if the engagement was broken by mutual agreement or unjustifiably by the donee. *See Heiman v. Parrish,* 262 Kan. 926, 942 P.2d 631, 635 (1997); *see also* 44 A.L.R.5th 1 (providing an extensive summary of the cases arising in this area and the rationales employed to resolve them). The rationale behind the "fault-based" approach is, in large part, as follows:

> On principle, an engagement ring is given, not alone as a symbol of the status of the two persons as engaged, the one to the other, but as a symbol or token of their pledge and agreement to marry. As such pledge or gift, the condition is implied that if both parties abandon the projected marriage, the sole cause of the gift, it should be returned. Similarly, if the woman, who has received the ring in token of her promise, unjustifiably breaks her promise, it should be returned. When the converse situation

---

**3.** We observe that other types of property may be shown to be conditional gifts given in contemplation of marriage, but such a classification would require specific evidence of such intent, as opposed to a mere showing that the ring was an engagement ring.

occurs, and the giver of the ring, betokening his promise, violates his word, it would seem that a similar result should follow, i.e., he should lose, not gain, rights to the ring. In addition, had he not broken his promise, the marriage would follow and the ring would become the wife's absolutely. The man could not then recover the ring.

44 A.L.R.5th 1 (citing *Sloin v. Lavine,* 11 N.J. Misc. 899, 168 A. 849 (1933)). Accordingly, under this rationale, the courts should not aid a donor, who has broken his promise of marriage, to regain possession of something that he could not have regained if he had kept his promise. *Id.*

A minority of jurisdictions has adopted a "no-fault" approach, i.e., the modern trend, holding that once an engagement is broken, the engagement ring should be returned to the donor, regardless of fault. *Heiman,* 942 P.2d at 635. Pursuant to this approach, fault is irrelevant, if ascertainable at all, because ownership of the engagement ring was conditional and the condition of marriage was never fulfilled. *Id.* (citing *Aronow v. Silver,* 223 N.J.Super. 344, 538 A.2d 851 (1987)). Some of these "no-fault" jurisdictions, for example, highlight the fact that the primary purpose behind the engagement period is to allow the couple to test the permanency of their feelings for one another, and with that purpose in mind, it would be irrational to penalize the donor for taking steps to prevent a possibly unhappy marriage. *See Fierro v. Hoel,* 465 N.W.2d 669 (Iowa Ct. App.1990). We find this latter approach to be more persuasive.

Indeed, the "no fault" approach is consistent with our "no-fault" system of divorce. *See* Ind.Code § 31–15–1–2 (having as its purpose to "abolish the existing grounds for absolute and limited divorce and to provide as the basis for dissolution of marriage: (A) irretrievable breakdown of the marriage; (B) the conviction of either party, subsequent to the marriage, of a felony; (C) impotence existing at the time of the marriage; and (D) incurable insanity of either party for a period of at least two (2) years"). We do not want to require our judiciary to tackle the seemingly insurmountable task of determining which party was at fault for the termination of an engagement for marriage, as such may force trial courts to sort through volumes of self-serving testimony regarding who-did-what during the engagement.

In adopting the "no-fault" approach, however, we note that, in this modern era, it is not uncommon for both parties to contribute financially to the purchase of an engagement ring. Though not customary, it is also not atypical for the woman, i.e., the donee or recipient, to purchase her own engagement ring. Armed with these realities, we hold that when an engagement ring is purchased in contemplation of marriage and such engagement does not result in marriage, the person who purchased the engagement ring is entitled to its return or, if return of the ring is impossible, to the monetary amount contributed toward the purchase of the ring.

Here, Fowler's gift to Perry of the engagement ring that he purchased for $5,499.00 was conditioned upon their ensuing marriage. When the promise of marriage was not kept, regardless of fault, the condition was not fulfilled and the ring must be returned to him. Because the ring at issue was stolen, Fowler is entitled to the purchase price of the ring, i.e., $5,499.00.[4]

For the foregoing reasons, we affirm the trial court's judgment with respect to

---

**4.** The record before us does not indicate that Perry contributed to the purchase of the ring.

Finding I but reverse with respect to Finding II. Rather, because Fowler is entitled to the price of the engagement ring at issue, we remand for judgment in his favor on that issue.

Affirmed in part, reversed in part and remanded.

FRIEDLANDER, J., and ROBB, J., concur.