**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**HEATHER GEORGE MYERS**
Greenwood, Indiana

**DONNA JAMESON**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**C. THOMAS BILLINGS**
Williams, Cone & Billings
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES H. PRIVETTE, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1111-DR-534 |
| | ) | |
| SHERRI E. PRIVETTE (MORRIS), | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-8510-DR-309

**May 29, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

In this dissolution action, Appellant-Respondent James Privette ("Husband") appeals from the order that he pay to Appellee-Petitioner Sherri Privette (Morris) ("Wife") an amount equal to thirty-three percent of certain pension payments he has received to date and that Wife is entitled to thirty-three percent of all future pension payments. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 12, 1986, the trial court entered a "Decree of Dissolution of Marriage" ("the Decree") formally ending Husband and Wife's marriage and disposing of their property. The Decree, which included an incorporated oral agreement between the parties regarding disposition of the marital estate, provided, in part, as follows:

> [Husband] is employed and has been for approximately 21 years at Naval Avionics and, as a result thereof, is entitled to certain pension benefits and privileges in the United States Civil Service Retirement System. The parties agree that [Wife] is and shall be entitled to thirty-three (33%) percent of any annuity or other pension benefits received by [Husband] at or subsequent to his future retirement, or termination of employment, from Naval Avionics. The parties shall execute any documents or other instruments necessary to carry out the terms of this agreement, it being the intention of the parties that [Wife] shall be entitled to receive her portion of the retirement benefits directly from the United States Civil Service Commission, or its designated plan administrator at the same time as payment or payments are made to [Husband].

Appellant's App. p. 13.

When Naval Avionics was privatized in 1997, Husband officially retired and began collecting monthly pension checks, although he continued to work at the same facility for the new, private company. In January of 1997, Husband began receiving pension checks of approximately $2506.00 per month, which had, by November of 2011,

risen to approximately $3467.00 per month. Wife, despite being aware that it was her responsibility to do so, did not file the necessary paperwork with the federal government to receive her share of the pension payments. Wife became aware that Husband was receiving his pension checks in September of 2009.

On July 14, 2010, Wife filed a "Motion for Proceedings Supplemental," seeking the retirement benefits she claimed were owed to her pursuant to the Decree. On October 21, 2011, the trial court held a hearing on the matter. At the hearing, Husband testified that he informed Wife in 1996 that it was her responsibility to apply for her share of the pension payments because he could not file the paperwork for her. After the hearing, the trial court ruled that Wife was to file the paperwork necessary to begin receiving thirty-three percent of the pension payments and that she was also entitled to an amount equal to thirty-three percent of all of the pension payments Husband had received since 1997, taking tax consequences into account. The trial court's decision was reduced to a written order filed on November 28, 2011. The order provided, in part, that "[t]he parties shall attempt to determine the appropriate amount of the 33% which [Husband] owes to [Wife] for prior years, taking into consideration appropriate matters such as income taxes that have been paid by [Husband]." Appellant's App. pp. 9-10.

**DISCUSSION AND DECISION**

Where, as apparently happened here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We will set aside

3

the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only … the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

Indiana Code section 31-15-2-17 (2009) provides, in relevant part, as follows:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:
…
(2) the disposition of any property owned by either or both of the parties[.]
…
(b) In an action for dissolution of marriage:
(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms[.]
…
(c) the disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.

"A property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent." *Myers v. Myers*, 560 N.E.2d 39, 42 (Ind. 1990). "A property settlement that is incorporated into a final divorce decree is a binding contract, and the dissolution court

4

may not modify that settlement absent fraud, duress, or undue influence." *Rothschild v. Devos*, 757 N.E.2d 219, 223 (Ind. Ct. App. 2001); *see* Ind. Code § 31-15-7-9.1 (2009) ("[O]rders concerning property disposition … may not be revoked or modified, except in case of fraud."). "A strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties or the court mandates the division of the property among the parties." *Poppe v. Jabaay*, 804 N.E.2d 789, 793 (Ind. Ct. App. 2004) (citing *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993)), *trans denied*. "One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a marriage." *Id*. (citing *Lankenau v. Lankenau*, 174 Ind. App. 45, 365 N.E.2d 1241, 1244 (1977)).

Turning to the terms of the Decree,

> [w]hen construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. [*Estate of Penzenik v. Penz Prods., Inc.*, 800 N.E.2d 1007 (Ind. Ct. App. 2003), *trans. denied*.] First, we must determine whether the language of the contract is ambiguous. "The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts." *Id*. at 1010. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder. [*Id*. at] 1007. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. *Id*. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict. *Id*.

*Whitaker v. Brunner*, 814 N.E.2d 288, 293-94 (Ind. Ct. App. 2004), *trans. denied*.

As previously mentioned, the Decree provides, *inter alia*, that "[t]he parties agree that [Wife] is and shall be entitled to thirty-three (33%) percent of any annuity or other pension benefits received by [Husband] at or subsequent to his future retirement, or termination of employment, from Naval Avionics." Appellant's App. p. 13. In other words, the clear intent of both parties is that Wife was entitled to thirty-three percent of any and all pension payments that Husband would ever receive, which has not happened. Nor was the onus solely on Wife to see that the clear intent of the Decree be carried out: the Decree clearly states that "[*t*]*he parties* shall execute any documents or other instruments necessary to carry out the terms of this agreement[.]" Appellant's App. p. 13 (emphasis added). While we acknowledge that only Wife could have actually executed the necessary documents, Husband was obligated to at least assist in the process by the plain language of the Decree. At the very least, we believe that Husband should have notified Wife when he began receiving the pension payments without her share taken out. The clear intent of *both* parties, as expressed in the Decree, was that Wife was entitled to thirty-three percent of any pension payment ever to be received by Husband, and, consistent with that intent, we conclude that Wife is not only entitled to thirty-three percent of all future payments, but all previous payments as well.

Husband argues that Wife should be barred from receiving any pension payments by the equitable doctrine of laches. We conclude that laches does not bar Wife. Laches, an equitable doctrine, is not applicable in this case, which is, at heart, a contract dispute. "'An action for breach of contract is a *legal* claim, such that laches will not operate to bar the claim when the applicable limitations period has not run.'" *Town of New Chicago v.*

6

*City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 652 (Ind. Ct. App. 2010) (citing 17B C.J.S. *Contracts* § 608 (1999) (emphasis in *Town of New Chicago*), *trans. denied*.

Husband also argues that Wife waived her right to claim her share of the pension payments. We conclude, however, that the record contains sufficient evidence to sustain the trial court's finding that Wife did not waive her right to collect thirty-three percent of the pension payments.

> Waiver is an intentional relinquishment of a known right, requiring both knowledge of the existence of the right and intention to relinquish it. *Matter of S.L.*, 599 N.E.2d 227, 229 (Ind. Ct. App. 1992). Moreover, waiver may be shown either by express or implied consent, and, thus, the right may be lost by a course of conduct which estops its assertion. *See Continental Optical Co. v. Reed*, 119 Ind. App. 643, 649, 86 N.E.2d 306, 309 (1949). However, waiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act. *See American Nat'l Bank & Trust Co. v. St. Joseph Valley Bank*, 180 Ind. App. 546, 554, 391 N.E.2d 685, 687 (1979).

*Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000). Although Husband testified that Wife at least implied to him at one point that she intended to relinquish her right to collect her share of the pension, the trial court was under no obligation to credit this testimony and did not. Wife may have been under the misapprehension that she could not file the pension paperwork until Husband retired and may have been ignorant of his retirement for years after it occurred, but that does not amount to an intentional relinquishment of her right to collect her portion of the pension payments. The trial court's conclusion that waiver does not bar Wife is not clearly erroneous.

7

Finally, Husband contends that the trial court awarded Wife an amount in excess of that to which she was entitled in the original 1986 dissolution order. Husband argues that the trial court erred in allowing Wife to collect pension payments that were not vested at the time of the dissolution. Even if this is so, however, Husband specifically agreed that Wife was entitled to "thirty-three (33%) percent of any annuity or other pension benefits received by [Husband] at or subsequent to his future retirement[,]" regardless of whether any of those pension rights were vested at the time. Appellant's App. p. 13. Because any error the trial court may have committed in this regard was invited, Husband will not now be heard to complain. *See, e.g.*, *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005) ("Under [the invited error doctrine], 'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'") (citation omitted).

We affirm the judgment of the trial court.

VAIDIK, J., and CRONE, J., concur.