**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 07 2013, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID J. SOKOLOWSKI**
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AMY (WINTON) OTIS, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1210-CC-505 |
| | ) | |
| MARKETING THREE LLC, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1202-CC-188

**May 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge.**

In 2007, Appellant/Defendant Amy (Winton) Otis received a personal loan for $2600.00 from First Bank of Delaware, with CashCall serving as the marketing agent for the transaction. In 2009, Otis made her last payment on the loan. Appellee/Plaintiff Marketing Three, who allegedly acquired rights to pursue the debt, filed a complaint on the promissory note, alleging that $2168.93 of the principal was still owed. Marketing Three served a request for admissions upon Otis, requesting, *inter alia*, that she admit that she had entered into a credit card agreement with Marketing Three or its predecessor in interest and that the balance sued upon was due and owing. Otis, who was *pro se* at the time, did not respond to the request for admissions within thirty days. Later, after retaining counsel, Otis filed a motion to withdraw admissions. Marketing Three moved for summary judgment, which motion the trial court granted. Otis now contends that the trial court erred in entering summary judgment in favor of Marketing Three. We agree and so reverse the judgment of the trial court and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

At some point in 2007, Otis arranged for a personal loan through CashCall, Inc., who was allegedly serving as marketing agent for alleged loan originator the First Bank of Delaware. According to the promissory note associated with the loan ("the Note"), which Otis denies ever signing, the amount of the loan was $2600.00 with an APR of 99.23% and a term of forty-three months. Pursuant to the Note, Otis would have to pay $9274.31 in forty-three payments to satisfy the debt. From June 26, 2007, until May 4, 2009, the date of her last payment, Otis made payments on the Note totaling more than $4000.00, reducing the principal balance to $2168.93 from $2600.00.

2

On February 13, 2012, Marketing Three filed suit on the Note, alleging that it had acquired rights to pursue the debt and that the original creditor was CashCall. The affidavit of debt attached to Marketing Three's complaint also identifies CashCall as the original holder of the Note. Marketing Three requested judgment in the amount of $2168.93 plus interest from the date of judgment and fees and charges of $315.00. On February 29, 2012, Otis, then *pro se*, answered the complaint. Otis admitted that she had negotiated a loan with CashCall but alleged that the terms of the loan given to her over the telephone were not those as related in the Note and that she had discharged her obligation to CashCall "via terms given on telephone call." Appellant's App. p. 21.

On March 25, 2012, Marketing Three filed a first set of requests for admission upon Otis. The first seven requests read as follows:

> 1. You entered into a written credit card agreement with plaintiff, or plaintiff's predecessor in interest.
> 2. With respect to the credit card representing the account sued upon, you received the credit card.
> 3. With respect to the credit card representing the account sued upon, you used, or authorized to be used, the credit card.
> 4. With respect to the credit card representing the account sued upon, you received the benefit of the use of the credit card.
> 5. With respect to the credit card representing the account sued upon, you received monthly statements regarding the account in question and the balance due.
> 6. You never disputed the charges on the account.
> 7. You never disputed the charges on the account in the time and/or manner required by the credit card agreement.

Appellant's App. p. 58.

Otis, still *pro se*, did not respond to Marketing Three's request for admissions. On May 12, 2012, Marketing Three, citing the Trial Rule 36 provision that requests for

admissions are admitted as true if not answered within thirty days, moved for summary judgment. Curiously, the designated copy of the request for admissions submitted by Marketing Three did not include the page that contained the aforementioned references to an alleged credit card account.

On June 25, 2012, Otis, now represented by counsel, filed a motion to withdraw deemed admissions and response to Marketing Three's summary judgment motion. Otis pointed out several contradictions in Marketing Three's filings, such as its assertions that CashCall was the original creditor while the Note clearly identifies the First Bank of Delaware as the first holder of the Note. Otis also noted that, while all other Marketing Three filings and submissions refer to an installment loan, the request for admissions refers only to a credit card account. Otis further noted that Marketing Three designated no evidence that CashCall was licensed or otherwise qualified to make "supervised loans" in Indiana in 2007. *See* Ind. Code § 24-4.5-3-501 ("'Supervised loan' means a consumer loan in which the rate of the loan finance charge exceeds twenty-one percent (21%) per year as determined according to the provisions on loan finance charge for consumer loans (IC 24-4.5-3-201)."). On September 5, 2012, following a hearing, the trial court entered summary judgment in favor of Marketing Three in the amount of $2483.93 plus statutory post-judgment interest.

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Entering Summary Judgment in Favor of Marketing Three

At the outset, we note that Marketing Three has not filed an Appellee's brief. In such cases, we do not need to develop an argument for Marketing Three, and we apply a less stringent standard of review. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We may reverse the trial court if Otis is able to establish prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.* When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

We conclude that the trial court erred in entering summary judgment in favor of Marketing Three. In our view, there remain at least two genuine issues of material fact. As an initial matter, we need only briefly address Otis's argument that the trial court abused its discretion in denying her motion to withdraw deemed admissions. In short, the requested admissions, even if we assume they are binding on Otis, are irrelevant. At

5

most, Otis admitted that she had defaulted on a credit card account with Marketing Three, and Marketing Three has never alleged that any such credit card account ever existed.

That said, we conclude that the designated evidence generates an issue of fact as to the actual terms of the loan and whether Otis actually satisfied them. Although Marketing Three designated the Note and an affidavit of debt, Otis filed an affidavit to the effect that she had never signed the Note and that she had satisfied the terms of the loan as related to her by CashCall over the telephone. Second, there is a genuine issue of material fact regarding the loan originator. As previously mentioned, some of Marketing Three's designated materials identify CashCall as the loan originator and some identify the First Bank of Delaware.

This second issue of fact is particularly significant because, as Otis points out, there is no designated evidence that CashCall was licensed or otherwise qualified to make supervised loans in Indiana in 2007. Indiana Code section 24-4.5-3-502, which governs supervised loans, provides, in part, as follows:

> (1) A person that is a:
>     (a) depository institution;
>     (b) subsidiary that is owned and controlled by a depository institution; or
>     (c) credit union service organization;
> may engage in the making of consumer loans that are not mortgage transactions without obtaining a license under this article.
> (2) A collection agency licensed under IC 25-11-1 may engage in:
>     (a) taking assignments of consumer loans in Indiana; and
>     (b) undertaking direct collection of payments from or enforcement of rights in Indiana against debtors arising from consumer loans;without obtaining a license under this article.
> (3) A person that does not qualify under subsection (1) or (2) shall acquire and retain a license under this article in order to regularly engage in Indiana in the following actions with respect to consumer loans that are not

6

mortgage transactions:
   (a) The making of consumer loans.
   (b) Taking assignments of consumer loans.
   (c) Undertaking direct collection of payments from or enforcement of rights against debtors arising from consumer loans.

Moreover, Indiana Code subsection 24-4.5-5-202(2) provides as follows:

If a creditor has violated the provisions of this Article applying to authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge. If the debtor has paid any part of the principal or of the loan finance charge, the debtor has a right to recover the payment from the person violating this Article or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt. With respect to violations arising from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the violation occurred. With respect to violations arising from other loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was paid.

Having concluded that there exist genuine issues of material fact to be resolved, we also conclude that the trial court erred in entering summary judgment in favor of Marketing Three.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

RILEY, J., and BROWN, J., concur.

7