**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*:

**BRIAN C. DICKERSON**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**MARK O'HARA**
**ASHLEE M. KESTLER**
Hostetter & O'Hara
Brownsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MARRIAGE OF     )
     )
BRIAN C. DICKERSON,     )
     )
    Appellant-Respondent,     )
     )
     vs.     )     No. 32A04-1211-DR-579
     )
SHANNON DICKERSON,     )
     )
    Appellee-Petitioner.     )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Special Judge
Cause No. 32D02-1208-DR-555

**October 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

# CASE SUMMARY

Appellant-Respondent Brian Dickerson ("Husband") and Appellee-Petitioner Shannon Dickerson ("Wife") were married on October 3, 1996, and had four children before separating on May 4, 2009, on which date Wife filed for dissolution of the parties' marriage. On May 29, 2009, the trial court issued a provisional order which provided, in part, that Husband would deposit $5000.00 per month into an account from which Wife would pay various expenses. The provisional order also provided that the $5000.00 per month payments partially covered amounts due for child support and that Husband would pay Wife an additional $350.00 per week for Wife's maintenance and support of the children.

On October 22, 2012, the trial court issued its decree of dissolution ("the Decree"). The Decree provided, *inter alia*, that Husband would pay $546.00 of child support per week, Wife was incapacitated and Husband would pay her $250.00 per week in permanent spousal maintenance, among the marital assets to be assigned to Wife were various firearms, and Husband's military pension was not part of the marital estate because it had not vested. On appeal Husband contends that the trial court (1) abused its discretion in ordering permanent spousal maintenance, (2) abused its discretion in assigning certain firearms to Wife, (3) erroneously concluded that Husband was in arrears in his child support obligations, and (4) denied him due process for allegedly ignoring his allegations of fraud by Wife since the issuance of the provisional order. Wife cross-appeals, contending that the trial court erred in concluding that Husband's military pension is not part of the marital estate. We affirm and remand with instructions.

2

## FACTS AND PROCEDURAL HISTORY

Husband first entered the United States military on May 17, 1985, and served until May 15, 1987. After completing law school, Husband entered the military again on January of 1992 and remained on active duty until late June of 1996. Husband entered the National Guard in January of 1997. Husband and Wife married in 1996, and, on September 4, 2009, Wife filed for dissolution of the marriage. Husband and wife had four children while married, the first born in 1996, the last in 2004. As of May 4, 2009, if Husband had been killed or lost his military employment for any reason, he would not have been entitled to receive any pension benefits. Husband became entitled to pension benefits on May 14, 2009.

On May 29, 2009, the trial court issued a Provisional Order regarding, *inter alia*, child support. The Provisional Order provided, in relevant part, as follows:

> 12. Until further notice of the Court, $2,500.00 from each of [Husband's] two paychecks per month shall be directly deposited into the account from which the expenses set forth on EXHIBIT 4 (a copy of which is attached hereto) are paid.…
> 13. As the debts listed in paragraph 12 include a substantial portion of amounts due for child support payment, the Child Support Worksheet amount of support is not applicable to this case.
> ….
> 20. [Husband] shall pay to [Wife] for her maintenance and support of the children $350.00 per week by Income Withholding Order or direct allotment to her checking account beginning June 12, 2009.
> ….
> Wife's Summary of Monthly Bills [attached to Provisional Order as "Exhibit 4"]
>
> | | |
> |---|---|
> | Citi Mortgage | $2,218 |
> | Nat. City Home Equity | $250 |
> | Duke Energy | $188 |
> | Vectren | $177 |

3

| | |
|---|---|
| AT&T | $125 |
| USAA Car Insurance | $250 |
| Verizon | $108 |
| TCU Truck | $276 |
| Bank of America | $300 |
| GE Money | $190 |
| USAA Credit | $300 |
| Lowe's | $170 |
| **TOTAL:** | **$4,552** |

Appellee's App. pp. 2, 4.

On March 7 through 9, 2012, the trial court conducted a dissolution hearing. At the hearing, Wife testified that during an incident in December of 2008, Husband broke several of Wife's bones and "ripped" all of the tendons in her foot. Tr. p. 305. Wife's foot has never fully healed and now, *inter alia*, she suffers from Reflex Sympathetic Dystrophia ("RSD"), a progressive neurological condition that causes nerves to send signals of extreme pain to the brain. Wife has difficulty walking and testified that RSD is more painful than anything she had ever experienced, including the two broken hands, five childbirths, and seventeen ruptured ovarian cysts she has endured. As of the hearing, Wife had undergone twenty-three separate procedures related to RSD, including five lumbar nerve blocks, three neck nerve blocks, and epidural blocks, and has had a spinal cord stimulator implanted in her back. RSD is a condition that cannot be cured, and it spreads to other parts of the body. Wife is now feeling the effects of RSD in her right and left hands as well as her foot. Wife is currently taking several medications for RSD, namely Savella, also used to treat fibromyalgia; Vimpat for seizures; Clonidine for hypertension; Topiramate for seizures; Prometrium for hormonal balance; Vitamin B12 for the formation of red blood cells and maintenance of the central nervous system; and

4

Hydrocodone for pain. Wife is ineligible for Social Security benefits because she has an insufficient work history and has no training or education beyond high school. Wife testified that she is completely incapable of employment.

Wife also testified regarding several firearms in the marital estate. Wife testified that at one time three of them had belonged to Husband's father but did not say how they had come to be in Husband's possession. Wife also testified that Husband was currently subject to a court order providing that he could not possess the firearms in question, effective indefinitely.

On cross-examination, Wife testified that although the provisional order of May 4, 2009, specified that the amount of the monthly home loan payment on the marital residence was $2218.00, she actually received notice on May 26, 2006, that the payment had been reduced to approximately $1773.00. Wife testified that she applied the difference to pay down the home loan on the marital residence. Wife also testified that all of the other debts listed on Exhibit 4 of the Provisional Order were joint, with the sole exception of the Lowe's debt, which was in Husband's name only. Wife admitted that she stopped paying on the Lowe's debt when Husband changed his password on the account.

On October 22, 2012, the trial court issued the Decree, which dissolved Husband and Wife's marriage. The Decree provided, in part, as follows:

> 9. The Court orders that [Husband] shall pay child support for the four (4) minor children to [Wife], through the Indiana Child Support Bureau, the sum of $546.00 per week beginning on the next Friday following this order.
> ….

5

The court finds [Husband] is in arrears on child support payments as ordered in the Provisional Order. The exact amount is disputed and the court was unable to make a determination on the amount from the evidence presented.

....

15. Based on the evidence presented, the Court finds the following to be the gross marital assets of the parties:

| Asset | Fair Market Value |
|---|---|
| Marital residence – 71 Stoneybrook Dr. Brownsburg, In. | $180,000.00 |
| 602/604 N. 3rd St., Vincennes, In. | 52,000.00 |
| 115 Wilbur St., Vincennes, In. | 39,000.00 |
| 119 Pine St., Vincennes, In. | 65,000.00 |
| 1708 Washington Ave., Vincennes, In. | 20,000.00 |
| Household and Personal Property | 12,474.00 |
| 1071 [sic] Chevrolet pickup truck | 1,100.00 |
| 2004 Pontiac Montana | 2,800.00 |
| 2008 Chevrolet Silverado | 15,500.00 |
| Regions CD | 6,479.00 |
| Citizens Bank & Trust | 2,550.00 |
| PNC Bank joint account | 0.00 |
| Irwin Union account | 12,580.00 |
| **GROSS MARITAL ESTATE** | **$409,483.00** |

The court finds that [Husband's] military pension was not vested as of May 4, 2009 and not a marital asset to be divided by the court.

16. Based on the evidence presented, the Court finds the following to be the gross marital debts of the parties:

| Debts | Balance |
|---|---|
| Mortgage on marital res. – Citi Bank | $92,980.00 |
| Litton Loan Service –N. 3rd St. | 51,130.00 |
| First American Bank –Wilbur St. | 41,690.00 |
| Heritage State Bank –Pine St. | 44,574.00 |
| First American Bank –Washington Ave. | 41,643.00 |
| PNC Home Equity on marital residence | 53,431.00 |
| PNC Home Equity –incurred by [Wife] | 1,721.00 |
| Teachers Credit Union – loan on 2008 Chev. Sil. | 7,000.00 |
| GE Online | 3,600.00 |

| | |
|---|---|
| USAA Master Card | 1,428.00 |
| Lowes – in [Husband's] name alone but no balance given | |
| Sears Master Card | 2,500.00 |
| Wabash Plumbing | 905.00 |
| Frizzi's Heating & Air | 685.00 |
| Vincennes Sun-Commercial | 55.00 |
| Joann's Fabric – in [Wife's] name alone | 4,717.00 |
| Total marital debts | $348,059.00 |

17. Based upon the above, the NET MARITAL ESTATE is $61,424.00

18. Indiana Code 31-15-7-5 mandates this Court to presume that an equal division of marital property between the parties is just and reasonable. However, this presumption may be rebutted by relevant evidence that an equal division would not be just and reasonable. The court finds that [Husband] earns all of the income of the parties. [Wife] is incapacitated and is unable to hold a full-time job.

19. [Wife] shall have as her sole and separate property the following:

| ASSETS | FAIR MARKET VALUE |
|---|---|
| Marital Residence – 71 Stoneybrook Dr. Brownsburg, In. | $180,000.00 |
| Household goods located at 71 Stoneybrook | 7,573.00 |
| Firearms and Safe | 3,080.00 |
| Firearms at Brownsburg Police Dept. | 375.00 |
| 2004 Pontiac Montana Van | 2,800.00 |
| GROSS DISTRIBUTION TO [Wife] | $193,828.00 |

20. [Wife] shall pay, be responsible for and hold respondent harmless from the following indebtedness:

| DEBTS | BALANCE DUE |
|---|---|
| Citi Mortgage on marital residence | $92,980.00 |
| PNC Home Equity | 53,431.00 |
| PNC Home Equity used by [Wife] | 1,721.00 |
| GE On-line loan | 3,600.00 |
| USAA MasterCard | 1,428.00 |
| Lowes charge exact balance not given  * | |
| Sears MasterCard | 2,500.00 |

7

Joann's Fabric                                    4,717.00

        TOTAL DEBTS TO [Wife]              $160,377.00

*  Note:  [Wife] failed to make monthly payments on the Lowes charge that was in [Husband's] name alone as ordered in the Provisional Order.  The court now assigns this debt to her.

        21.  Based on the above, the NET DISTRIBUTION to petitioner is $33,451.00.

        22.   [Husband] shall have as his sole and separate property the following:

| ASSETS | FAIR MARKET VALUE |
|---|---|
| Regions CD | $      6,479.00 |
| 602/604 N. 3rd St., Vincennes, In. | 52,000.00 |
| 115 Wilbur St., Vincennes, In. | 39,000.00 |
| 119 Pine St., Vincennes, In. | 65,000.00 |
| 1708 Washington Ave., Vincennes, In. | 20,000.00 |
| 1971 Chevrolet pickup truck | 1,100.00 |
| 2004 Pontiac Montana | 2,800.00 |
| 2008 Chevrolet Silverado | 15,500.00 |
| Household property in possession | 967.00 |
| Tools | 479.00 |
| PNC account | 2,550.00 |
| Irwin Union account | 12,580.00 |

        GROSS DISTRIBUTION TO [Husband]$   215,655.00

        23.   [Husband] shall pay, be responsible for and hold [Wife] harmless from the following indebtedness:

| DEBTS | BALANCE DUE |
|---|---|
| Litton Loan– North 3rd St. | $51,130.00 |
| First American–Wilbur St. | 41,690.00 |
| Heritage State Bank– Pine St. | 44,574.00 |
| First American Bank – Washington Ave. | 41,643.00 |
| Teachers Credit Union – 2008 Chev. Sil. | 7,000.00 |
| Wabash Plumbing | 905.00 |
| Frizzi's Heating & Air | 685.00 |

8

Vincennes Sun-Commercial                          55.00

       TOTAL DEBTS TO [Husband]:          $187,682.00

24.  Based on the above, the NET DISTRIBUTION to [Husband] is $27,973.00.

Note:  The court recognizes that [Wife] applied the excess payments received from [Husband] pursuant to the provisional order to payment of joint and individual debts instead of retaining the excess payments in the account as ordered.  The court does not find [Wife] in contempt on this issue.  These additional payments on the debts benefited both parties and the children.  This makes more money available to be used in support of the children instead of payment of debts.
….
26.   The court finds from the evidence that [Husband] broke [Wife's] foot during a physical altercation in December of 2008.  As a result, [Wife] has developed Reflex Sympathetic Dystrophia (RSD).  She has had a pain stimulator implanted in her back to help control the pain in her foot.  This is a progressive disease and she now has begun to have pain problems in her hand.  She is on several medications and will be having another procedure to hook up the pain stimulator to her hand in the near future.

[Husband's] expert, Michael L. Blankenship, testified that he didn't see any restrictions on [Wife's] medical records that would prevent her from working.  Neither did he see anything that said she could work.  He felt that sedentary work would not be precluded.  He did admit that RSD can be progressive.  He admitted that he had not met [Wife] or that functional capacity evaluation had been done on her.

The court concludes that [Wife] is incapacitated to the extent that her ability to support herself is materially affected.  The court orders [Husband] to pay her maintenance in the amount of $250.00 per week beginning on Friday, October 26, 2012 and each Friday thereafter subject to further review by the court if the situation changes.

Appellant's App. pp. 20-26.

## DISCUSSION AND DECISION

Where, as apparently happened here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine

whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only … the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

*Husband's Appeal Issues*

## I. Spousal Maintenance

Indiana Code section 31-15-7-2 (2007) provides, in relevant part, as follows:

A court may make the following findings concerning maintenance:
> (1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

We have stated the following regarding review of spousal maintenance awarded due to physical or mental incapacitation:

> The trial court has discretionary power to award maintenance. Our review, as in other cases involving the exercise of discretion, is limited to the question of whether the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." ….

10

> Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable under the facts of each case. …. [T]he [maintenance] statute does not require a spouse to be completely bedfast or totally disabled before he or she can successfully claim maintenance. Rather than establishing a minimal percentage of disability, the statute creates a flexible standard which allows a trial court to consider whether any incapacity significantly affects a spouse's ability to support h[er]self. …. [T]he fact that a spouse is able to perform some job or even that she is currently employed does not necessarily make maintenance inappropriate.

*In re Marriage of Dillman*, 478 N.E.2d 86, 87-88 (Ind. Ct. App. 1985) (citations omitted and interpreting predecessor to Indiana Code section 31-15-7-2).

Husband contends that the trial court abused its discretion in ordering him to pay spousal maintenance to wife. We cannot agree, as Wife presented ample evidence to support a finding that she is physically incapacitated. Wife's foot has never fully healed following the December of 2008 incident, which resulted in RSD. Wife testified that she has difficulty walking, RSD is more painful than anything she has ever experienced, and she is now unable to work. As of the hearing, Wife had undergone twenty-three separate procedures related to RSD, which is a condition that cannot be cured and has spread to other parts of her body. Wife is currently taking several medications for RSD and is ineligible for Social Security benefits because she has an insufficient work history and has no training or education beyond high school. This evidence, to say the least, is more than enough to support the trial court's order of spousal maintenance. Husband points to some evidence that arguably contradicts Wife's evidence regarding her ability to work, but the trial court was under no obligation to credit this evidence and apparently did not. Husband's argument is an invitation to reweigh the evidence, which we will not do.

## II. Division of Personal Property in Marital Estate

11

Husband contends that the trial court abused its discretion in awarding Wife certain firearms from the marital estate that he alleges were inherited from his father. "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id.* (citations, quotation marks, and brackets omitted).

> Indiana Code section 31-15-7-5 provides, in part, that

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>     (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>     (2) The extent to which the property was acquired by each spouse:
>         (A) before the marriage; or
>         (B) through inheritance or gift.

Husband contends that the trial court improperly failed to take into account that certain firearms assigned to Wife from the marital estate had been inherited from his father. As Wife points out, however, while there is no dispute that Husband received

12

certain firearms from his father, there is no evidence that they were inherited. Moreover, even if we were to assume that Husband *did* inherit the firearms in question, we would still find no abuse of discretion in the assignment of them to Wife. Wife testified at the hearing that Husband is currently not able to possess the firearms at issue pursuant to a court order of indefinite duration. Under the circumstances, we cannot say that the trial court abused its discretion in assigning the firearms to Wife.

### III. Child Support

Husband disputes the trial court's finding that he is in arrears in child support payments, arguing essentially that the Provisional Order contained no obligation for child support. The Provisional Order, however, specifically provided that the $5000.00 Husband was obligated to pay Wife each month included "a substantial portion of amounts due for child support payment" and that "[Husband] shall pay to [Wife] for her maintenance and support of the children $350.00 per week by Income Withholding Order or direct allotment to her checking account beginning June 12, 2009." Appellee's App. p. 2. While the total amount of the Husband's child support obligation was not entirely clear in the Provision Order, it is clear that it did, in fact, contain a child support obligation, fatally undermining Husband's argument in this regard. We affirm the trial court's finding that Husband was in arrears in his child support payment and remand for further proceedings to determine the amount of that arrearage.

### IV. Alleged Fraud Committed by Wife

Husband argues that pursuant to the provisions of the Provisional Order he has, since May of 2009, been paying large sums of money to Wife which have been diverted

13

to her personal benefit instead of being applied to certain debts for which they were intended. Husband contends that this diversion has totaled approximately $250,000.00 altogether. For example, Husband points out that the Provisional Order obligated him to pay Wife $2218.00 per month to pay the loan on the marital residence, when, in fact, the actual payments were $1773.00. Husband essentially asserts that the $445.00 difference was improperly diverted to Wife's benefit. Wife, however, testified that she applied the surplus money to the home loan, which was a joint asset, so excess payments benefited Husband and Wife equally. Most importantly, there is no evidence that Wife ever improperly failed to pay any of the other joint debts or diverted any money for any improper purpose. The one exception would be the Lowe's debt, which, it should be noted, Wife only stopped paying down because Husband changed his password, denying her access. This debt, however, was assigned to Wife in the final Decree, so any harm Husband suffered by Wife's failure to pay it down has been remedied. Husband has failed to establish that Wife has committed any improper diversion of funds.[1]

*Wife's Cross-Appeal Issue*

### V. Husband's Military Pension

Wife contends that the trial court erroneously failed to include Husband's military pension in the marital estate. Indiana Code section 31-15-7-4(a) provides, in part that, "In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the

---

[1] Husband also contends that the trial court denied him due process by failing to address several challenges to the Provisional Order he claims to have made regarding Wife's alleged fraud. Because we conclude that Husband has failed to establish any impropriety on Wife's part or harm to him, we need not address this specific argument.

14

property of the parties … acquired by either spouse in his or her own right … after the marriage … and … before final separation of the parties[.]" Indiana Code section 31-9-2-46 provides that "'Final separation', for purposes of IC 31-15-7, means the date of filing of the petition for dissolution of marriage[.]" Finally, Indiana Code section defines "property" as, *inter alia*, "the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested[.]"

Here, Husband presented evidence that he, in fact, had no right to receive any military pension benefits before May 13, 2009, or nine days after final separation. Dema Schoon, who had handled thousands of military pensions in her position at the Military Department of Indiana Joint Force Headquarters administrative section, testified that if Husband had died or his employment with the National Guard had terminated for any reason prior to May 13, 2009, he (or his estate) would have been entitled to receive no benefits related to his military pension. Because Husband did not yet have the right to collect any military pension on May 4, 2009, the date of separation, the trial court correctly did not include the pension in the marital estate.

## CONCLUSION

We affirm the trial court's (1) award of spousal maintenance to Wife, (2) assignment of certain firearms to Wife in the property division, (3) finding that Husband is arrears in his child support obligation, (4) conclusion that Wife had not improperly diverted payments made pursuant to the Provisional Order, and (5) conclusion that Husband's military pension is not a marital asset. We remand with instructions to

consider evidence and establish the amounts of Husband's child support arrearage and the Lowe's debt, the latter of which was assigned to Wife.

The judgment of the trial court is affirmed and remanded with instructions.

BAILEY, J., and MAY, J., concur.